NILS KVALE, Respondent, v. DANIEL KEANE, Appellant.

(168 N. W. 74.)

**Contract — by correspondence — making of — evidence.**

1. Evidence examined and *held* not sufficient to establish the making of a contract by correspondence.

**Parties — incapacity of one — to make contract — mental and physical condition — advanced age — matters for consideration — evidence.**

2. Evidence examined and *held* to establish the incapacity of the defendant to make a contract by reason of his mental and physical disability, coupled with his very advanced age.

**Letters sent through mail — receipt of by person to whom addressed — proof of — properly addressed — proper postoffice — properly stamped — deposited in some postoffice — or postal subdivision — mail boxes — rural routes — presumption of law.**

3. Before there arises any presumption in law that a letter claimed to be sent by one party to another, the addressee, has been received by the addressee, it must first be proved that the letter so sent was properly addressed to the addressee at his postoffice address, and was properly stamped with sufficient postage thereon and deposited in some postoffice or some subdivision of the postal department where mail may properly and legally be deposited for collection and transmission, such as mail boxes on the rural routes.

**Letter claimed to have been sent — letter claimed to be answer — value as evidence — how established — proof necessary — foundation.**

4. Where it is sought to introduce in evidence an answer to a letter which it is claimed was previously sent, before the letter, which is claimed to be

the answer, can be received in evidence, it must first be proved that the letter previously sent was properly addressed to the addressee at his postoffice address with sufficient postage thereon, and that thereafter such letter was deposited in the postoffice or some branch of the postal service authorized to receive and collect mail for transmission, and, until such proof is made concerning the previous letter, there is no foundation laid for the admission in evidence of the purported answer thereto, and the same is inadmissible.

Opinion filed May 23, 1918.

Appeal from District Court, Renville County, North Dakota, Honorable *K. E. Leighton,* Judge.

Reversed.

*James R. Hickey (Lee Combs,* of counsel), for appellant.

An offer must be accepted without any qualifying terms.   Comp. Laws 1913, § 5862.

An offer of a bargain made by one person to another, imposes no obligations on the former until it is accepted by the latter, according to the terms of the offer.   Wilkins Mfg. Co. v. H. M. Loud & Sons, 94 Mich. 148, 53 N. W. 1045; DeJong v. Hunt, 103 Mich. 94, 61 N. W. 341; Central Bitulithic Paving Co. v. Highland Park, 129 N. W. 46.

A contract is never made so long as, in the contemplation of both parties thereto, something yet remains to be done, before the contract relation is established. . Baker v. Holt, 14 N. W. 8; Northwestern Iron Co. v. Mead, 21 Wis. 480; Bowen v. McCarthy, 48 N. W. 155; Wilkings Mfg. Co. v. Loud & Sons Lbr. Co. 53 N. W. 1045; Russell v. Falls Mfg. Co. 82 N. W. 134; Saram v. Richards, 132 S. W. 285.

Where a condition is imposed in a purported acceptance of an offer, or any changes made in the offer as submitted, such an acceptance becomes a new or return offer, and will not constitute a contract until the other party has agreed to it.   Weaner v. Burr, 31 W. Va. 736, 3 L.R.A. 94, 8 S. E. 743; Krum v. Chamberlain, 57 Neb. 220, 77 N. W. 665; Knowlton's Anson, Contr. 22; Baxter v. Bishop, 22 N. W. 685.

Contracts may be made by correspondence, but to constitute a contract by correspondence one letter must contain a distinct proposition, and the answer must be an unqualified acceptance.   1 Parsons, Contr. 476; Vassar v. Champ, 11 N. Y. 441; Gilbert v. Baxter, 71

Iowa, 327, 32 N. W. 364; Coad v. Rogers, 88 N. W. 947; Fashier v. Fetzer, 134 N. W. 557; Knox v. Murray, 140 N. W. 652; Robinson v. Willer, 87 Ga. 704; Lanz v. McLaughlin, 14 Minn. 72; Williams v. Stewart, 25 Minn. 516; Langelier v. Schaefer, 36 Minn. 361; Brown v. Munger, 42 Minn. 482; Ames & Frost Co. v. Smith, 65 Minn. 304; Reid v. N. W. Imp. & Wagon Co. 79 Minn. 369; Rahn v. Cummings, 131 Minn. 141, 155 N. W. 201; Leslie v. Mathwig, 131 Minn. 159; Lewis v. Johnson, 123 Minn. 409, L.R.A. 1915D, 150, 143 N. W. 1127, and cases cited; Wristen v. Bowles, 82 Cal. 84.

"The offer must be accepted without the injection of new terms." Nils v. Hancock, 140 Cal. 157, 73 Pac. 1070; German L. & S. Co. v. McLellan, 154 Cal. 710; Hunkins Willis Lime & Cement Co. v. Los Angeles Warehouse Co. 155 Cal. 41; Riley v. Grant, 94 N. W. 427; Stearns v. Clapp, 94 N. W. 430; Babcock v. Ormsby, 100 N. W. 759; Fountain City Drill Co. v. Lindquist, 114 N. W. 1098; Stenson v. Elfmann, 135 N. W. 694; Harris Bros. v. Reynolds, 17 N. D. 16; Beiseker v. Amberson, 17 N. D. 15, 116 N. W. 94.

The United States Supreme Court rule is the same. Eliason v. Henshaw, 4 Wheat. 225; Snow v. Miles, 3 Cliff. 608; Head v. The Providence Ins. Co. 2 Cranch, 127; Carr v. Duval, 14 Pet. 77; Ocean Ins. Co. v. Carrington, 3 Conn. 557; Myers v. Keystone Ins. Co. 27 Pa. 268; Tilley v. Cook County, 103 U. S. 155, 26 L. ed. 374.

"Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation either completely or nearly so, together with full compensation for any want of entire performance." The remedies must be mutual. Comp. Laws 1913, § 7193; 39 Cyc. 1551, 1561; Kinkead v. Schreve, 17 Cal. 275.

"Where a purchaser attempted to rescind the contract of sale, the vendor was not required to tender performance, except as a prerequisite to suit for performance." McArthur v. Sheboygan, 120 N. W. 575.

"It is as much the duty of the plaintiff to tender the money as it is the duty of the defendant to tender the deed." Englander v. Rogers, 41 Cal. 420 and cases cited; Dennis v. Strassburger, 89 Cal. 583; Claude v. Richardson, 103 N. W. 991; Arnett v. Smith, 11 N. D. 55,

88 N. W. 1037; 11 Century Dig. cols. 1148, 1458 and 1460; Coad v. Rogers, 88 N. W. 947.

Courts of equity will not compel parties to make contracts and then compel the specific performance of them. Kulberg v. Georgia, 10 N. D. 461, 88 N. W. 87.

Equity will not decree specific performance of a writing which lacks the essential elements of consideration, and mutual assent of the makers, to all the terms of the writing. Kaster v. Mason, 13 N. D. 107, 99 N. W. 1083; Miller v. Tjexhus, 104 N. W. 519; Sennett v. Melville, 107 N. W. 991.

An agent cannot make contract for the sale of land in absence of written authority. Comp. Laws 1905, § 5407; Ballou v. Bergvendsen, 9 N. D. 285, 83 N. W. 10; Ballou v. Carter, 137 N. W. 603.

Specific performance will not be decreed unless the party bringing the action has performed on his part, or can be compelled to specifically perform. Comp. Laws 1913, § 7193; Knudtson v. Robinson, 18 N. D. 12, 118 N. W. 1051; Stenson v. Elfmann, 29 S. D. 59, 135 N. W. 694; Ugland v. Kolb, 23 N. D. 158, 134 N. W. 879.

"Oral evidence is not admissible to supply defects in a written contract which by the Statute of Frauds is required to be in writing." Phelan v. Neary, 117 N. W. 142; Paul v. Paul, 125 Mo. 9, 28 S. W. 171; Wringer v. Holtzclaw, 112 Mo. 519, 20 S. W. 800; 26 Am. & Eng. Enc. Law, 21; Sennett v. Melville, 107 N. W. 991.

*Ryerson & Rodsater,* for respondent.

The findings of the trial court, while they may not be conclusive, are entitled to great consideration by the supreme court, and should be sustained when supported by substantial evidence. Merchants Nat. Bank v. Collard, 33 N. D. 556, 157 N. W. 488.

The land was not the homestead of the defendant. He never resided upon it with his family, or claimed it as the homestead of himself and family. Brokken v. Baumann, 10 N. D. 453.

"The prerequisites to an estate of homestead are in actual devotion to the use of a home." Styles v. Theo. P. Scotland Co. 22 N. D. 469; Calmer v. Calmer, 15 N. D. 120, 106 N. W. 684; Brokken v. Baumann, 10 N. D. 455, 88 N. W. 84; McCanna v. Anderson, 6 N. D. 482, 71 N. W. 769; Hoitt v. Webb, 36 N. H. 166; Helgebye v. Dammen, 13 N. D. 167, 100 N. W. 245.

A witness may qualify as an expert in handwriting by showing that he has made a special study of handwriting; has given instruction in the art, or has had large experience in examining handwritings or signatures in the course of his profession or business. 17 Cyc. 171; State v. David (Mo.) 33 S. W. 28; Cochrane v. National Elev. Co. 20 N. D. 169. 127 N. W. 725; 15 Am. & Eng. Enc. Law, 268.

"Letters received in response to letters to particular persons purported to be written by or for the person addressed are presumed to be genuine." Melby v. Osborne (Minn.) 24 N. W. 253.

"The law presumes that letters mailed and telegrams sent in due course of business were received." Long Bell Lumber Co. v. Nyman (Mich.) 108 N. W. 1019; Omaha v. Yancey (Neb.) 135 N. W. 1044.

Where the pleadings clearly disclose that proof of certain documents will be necessary at the trial, no notice to produce the primary evidence is necessary, and, in its absence, secondary evidence will be received. J. L. Owens Co. v. Bemis, 22 N. D. 159, 133 N. W. 59.

Even though a contract is made without authority of the agent, yet its adoption with full knowledge of all the facts is a complete ratification. 16 Cyc. 754; Violet v. Rose (Neb.) 58 N. W. 216.

In the case of a contract claimed to have been made by correspondence in the form of letters, it is the duty of the court to construe the offer and the letter of acceptance together in their entirety. Single phrases or paragraphs cannot be separated and thus considered. It is from a consideration of the whole that the court must draw its conclusion as to whether or not both parties understood what they were doing, or whether or not the minds of both parties met on the subject-matter. Kreutzer v. Lynch (Wis.) 100 N. W. 887.

"An offer in specific terms and without conditions for the purchase of a tract of land, made by letter or telegram, unconditionally accepted, becomes a binding contract. Mitchell v. Knudtson Land Co. 19 N. D. 736, 124 N. W. 946; Federal Land & Securities Co. v. Hatch (Iowa) 125 N. W. 837; Sanders v. Pottlitzer Bros. Fruit Co. 144 N. Y. 209, 29 L.R.A. 431; 4 L.R.A.(N.S.) 177; Drummond v. Crane (Mass.) 35 N. E. 90; Greenawalt v. Este (Kan.) 10 Pac. 803; Cohn v. Plumer (Wis.) 60 N. W. 1000; 9 Cyc. 282 et seq.

A tender is never necessary where the other party has placed himself in a position so that any tender would be ineffectual—where it would

be a useless formality, like in this case—where appellant had sold the land in question to another and had so advised respondent. Kreutzer v. Lynch (Wis.) 100 N. W. 887; Potter v. Taggert, 54 Wis. 395, 11 N. W. 678; Gouche v. Milbrath, 94 Wis. 674, 69 N. W. 999; Matthews v. Ins. Co. 115 Wis. 272, 275, 91 N. W. 675; James v. Valentines School (Wis.) 99 N. W. 1043.

GRACE, J. Appeal from the district court of Renville county, North Dakota, Honorable K. E. Leighton, Judge.

This action is one of specific performance wherein the plaintiff seeks to have the defendant perform a certain alleged contract claimed by the plaintiff to have been made between defendant and plaintiff with reference to the N. E. ¼ of section 21, township 162, range 86, Renville county, North Dakota. Plaintiff claims that he is entitled to conveyance of said premises from the defendant to the plaintiff upon the payment by the plaintiff to the defendant of the purchase money according to the terms of the contract. The facts in the case are as follows:

On the 7th day of April, 1916, the defendant was the owner of a certain tract of land above described. The defendant is a resident of the city of St. Paul, Minnesota. It is claimed by the plaintiff, that on the 7th day of April, 1916, the defendant made an offer, in writing, to sell the land in question to the plaintiff for $3,200, the terms of such sale to be as follows: $250 when the deal is closed, $250 per year, after the year 1916, payable January 1st of each year, and the balance, at the end of five years, to then become due and payable; interest on deferred payments to be at the rate of 6 per cent per annum, payable semiannually, the first interest payments to be made October 1, 1916, and every six months thereafter. Plaintiff claims that on the 14th day of April, 1916, and before said offer to sell was withdrawn by the defendant, the defendant's offer to sell such land to the plaintiff was accepted, which acceptance in writing was communicated to the defendant and received by him about the 17th day of April, 1916. After acceptance by the plaintiff of defendant's offer was communicated to and received by the defendant, the defendant notified the plaintiff, in writing, that he would not perform his part of the contract. The plaintiff asserts, he is ready, able, and willing

to perform his part of the contract. Defendant refuses to make any conveyance of said land. The contract, if any, is in the form of letters exchanged between the plaintiff and defendant.

The action is maintained upon the theory, and the complaint is framed in pursuance of the theory, that the defendant made an offer, in writing, to sell the real estate in question for a specific price and upon specific terms; and that the plaintiff made an unconditional acceptance, in writing, of such offer, claiming thereby to have made a binding contract for the purchase of said land. It is a principle of law, well established and understood, in the law of contracts, that where one, by letter, makes an offer to sell property for a specified price and upon specific terms and there is an unqualified and unconditional acceptance of the offer, the mutual letters thus written make and constitute a contract in writing. It is also a well-settled principle of law that in thus construing such letters to constitute a contract, there must be no deviation from the terms of the offer in the letter accepting the terms of the offer. The letter of acceptance must contain no new or different proposition, which would, to any degree, change the terms of the offer. When an offer is made as above stated, the acceptance must contain no conditions which add to the terms of the offer. By this rule the transaction in question must be measured.

However, the terms of the contract, or the terms of the offer and the acceptance thereof, must be distinguished from matters which relate not to the terms of the contract, but to the execution and performance of the contract. This distinction is of importance where contracts are made as a result of correspondence. After setting forth the correspondence which is the basis of the contract in question, we will endeavor to point out the distinction as it applies to this case.

The entire correspondence is as follows: Kvale testifies he had some correspondence with Daniel Keane,—that he wrote a letter to him on March 17, 1915. He testified that he had no copy of the letter nor the original, but that he wrote and asked him if he would sell the land. To the letter written March 17, Kvale testifies he received a reply which is exhibit 2, which came inclosed in exhibit 1, the envelop. The envelop is postmarked at St. Paul, Minnesota, March 24, 1916. In the upper left-hand corner is the conceded address of

the defendant, "642 Inglehart avenue, St. Paul, Minnesota." The address on the envelop is "Mr. Nels Kvale, R. F. D. No. 2, Tolley, North Dakota."

Exhibit 2 reads as follows:

St. Paul, Minnesota.  3/23—16.

Mr. Nels Kvale,
  R. F. D. No. 2,
    Tolley, North Dakota.
Dear Sir:—

I received your letter of March 17, 1915, but did not answer at that time as I had a cash offer at that time.  Will you let me know whether you still desire the place and what you would be willing to pay, at once?  I also wish you would let me know what basis of crop payment you would be willing to make.

Hoping to hear from you soon, I am

Yours truly,
Daniel Keane,
642 Inglehart Avenue,
St. Paul, Minnesota.

The plaintiff testifies that he wrote an answer to exhibit 2, addressed to Daniel Keane at 642 Inglehart avenue, St. Paul, Minnesota, and deposited the same in the mail; that he received a letter marked exhibit 4, which came in the envelop marked exhibit 3.  Envelop is postmarked St. Paul, Minnesota, April 10, 1916.  In the upper left-hand corner, it contains the following words:  "642 Inglehart avenue, St. Paul, Minnesota."  The envelop is addressed to Mr. Nels Kvale, Tolley, North Dakota.  The plaintiff testifies that the letter, exhibit 4, was contained in the envelop, exhibit 3, and was received by the plaintiff in the United States mail.

The letter, exhibit 4, reads as follows:

St. Paul, Minnesota, 4/7—16.

Mr. Nels Kvale,
  Tolley, North Dakota.
Dear Sir:—

Received your letter of March 31st—16.  I would accept thirty-two hundred ($3,200) dollars, based on the following payments:

Two hundred fifty (250) dollars when the deal is closed, $250 per year after 1916, first payment to be made on or before January 1st of each year, the interest to be paid semiannually on or before the 1st of October, 1916, and payment every six months, the rate of interest to be 6 per cent. I will give you a mortgage running for five years, and if you desire, you can renew mortgage at that time if the total amount of same is not paid. The taxes are paid for 1915 and you will pay all taxes from that year.

Will you kindly let me hear from you at your earliest possible convenience?

Yours truly,<br>
Daniel Keane,<br>
642 Inglehart Avenue,<br>
St. Paul, Minnesota.

P. S. I do not understand what crop payments mean. If the proposition above agrees, kindly answer.

The plaintiff testified that he wrote Mr. Keane the letter which is exhibit 5, in answer to exhibit 4, and addressed it to Daniel Keane, 642 Inglehart avenue, St. Paul, Minnesota.

Tolley, North Dakota, April 14, 1916.

Mr. Daniel Keane,
    642 Inglehart Avenue,
      St. Paul, Minnesota.
Dear Sir:—

I have received yours of the 7th inst. in regard to sale of N. E. $\frac{1}{4}$ of sec. 21, twp. 162, rge. 86, which you offer for a price of $3,200 with a cash payment of $250 at the time when the deal is made and balance at 6 per cent semiannually. I hereby agree to pay you the said price as per your terms stated in your letter, and inclose my check for $10 in advance as part payment of the $250 to be paid when the deal is closed, and I would therefore ask you to have the contract executed and sent to me in duplicate form, and I will sign same and return copy to you with $240 still due you on the first payment. I will appreciate your prompt attention to this as the spring work soon

commences and I will have to make proper arrangements to work this land.

Yours very truly,<br>Nels Kvale.

In reply to this letter, plaintiff testifies he received the following letter:

Exhibit 6.

St. Paul, Minnesota, April 17, 1916.

Mr. Nels Kvale,
  Tolley, North Dakota.
Dear Sir:—

Your letter was received by me this morning inclosing a check for $10 which I herewith return to you, as I have already sold my property, and will say that you were too slow in answering my letter. If you had answered it about five days ago the sale would have been made. Therefore, having sold the property, I return your check.

Yours very truly,<br>Daniel Keane.

It must be conceded that the terms of the contract are: The price of the land, the amount of the initial payment, and the subsequent payments to be made yearly, the time when the payments should be made, the rate of interest, the taxes, and the proposition to take a mortgage, which was evidently what the defendant meant in his reference to a mortgage in his letter of April 7th. These terms are definite and certain. There is no room for doubt as to what they mean. The plaintiff in his reply letter accepts all of such terms. Attention is called to his language in this letter: "I hereby agree to pay you the said price as per your terms stated in your letter,"— then follows the balance of the letter. It will be seen there are no new terms suggested, no change in the terms demanded, but an absolute acceptance of the terms as stated by the defendant. The other matters referred to in plaintiff's reply as to the making out of the contracts in duplicate which he asked the defendant to make out and send to him, and which he would sign and return a copy, together with the balance of the first payment of $240—all related to the execution and

performance of the contract, and did not relate to the making of the contract or the terms thereof. The making of the contract and execution and performance must be distinguished. The making of the contract, if it were made, was completed between the plaintiff and defendant when the plaintiff had quoted his price and terms in the manner in which he did, which price and terms were unreservedly accepted by the plaintiff. After this would come the execution of the contract which had been made. While the letters of themselves constitute the contract so far as to be binding between the parties, and are effective for the purpose of showing an actual meeting of the minds of the parties in the contract, and are sufficient to take the matter without Statute of Frauds, the plaintiff had the right to assume that the defendant would desire to have the contract executed in a more durable form and in accord with the ordinary custom of having the same put in the form of a contract for deed. When the defendant made the price and terms in the manner in which he did, he necessarily impliedly obligated himself to complete the sale of the land by reducing the terms to the form of the ordinary contract, or, in other words, to place such words in a permanent form so as to protect both himself and the buyer.

That part of the plaintiff's letter which refers to the payment of the $10 and the payment of the $240 after plaintiff had signed and returned a copy of the contract related to the performance of the contract, and, in no manner, changed the terms stated by the defendant. As it appears to us, if the defendant made the contract, it is his duty to enter into a contract or execute a conveyance which would contain the terms enumerated by him. It might not be the duty of the defendant to make such contract any more than that of the plaintiff, but it certainly constitutes no change in the terms of the contract for the plaintiff to request the defendant to draw such contract in duplicate.

We are of the opinion that the correspondence taken as a whole is insufficient to constitute a contract whereby the defendant sold the land in question to the plaintiff upon the terms stated in the letters of the defendant, and insufficient to show that the plaintiff purchased such land upon such terms provided; the correspondence, as introduced in the case, was incompetent evidence; and, further, there was no contract, for the reason that the defendant had insufficient capacity

to enter into the contract. As to the question whether the letters were properly admitted in evidence, and as to whether there was a sufficient foundation laid for the introduction of the letters in evidence, we are of the opinion that no proper foundation was laid for the introduction in evidence of such letters, and that they were improperly admitted as evidence. The general rule applicable in this case is that laid down in § 2153, volume 3, Wigmore on Evidence, and reads as follows: "When a letter is received by due course of mail, purporting to come in answer from the person to whom a prior letter has been sent, there are furnished thereby, over and above mere contents showing knowledge of facts in general, . . . three circumstances evidencing the letter's genuineness: First, the tenor of the letter as a reply to the first indicates a knowledge of the tenor of the first. Secondly, the habitual accuracy of the mail in delivering a letter to the person addressed and to no other person, . . . indicates that no other person was likely to have received the first letter and to have known its contents. Thirdly, the time of the arrival, in due course, lessens the possibility that the letter, having been received by the right person but left unanswered, came subsequently into a different person's hands and was answered by him. To this may be added the empirical argument that in usual experience the answer to a letter is found in fact to come from the person originally addressed. There seems to be, here, adequate grounds for a special rule declaring these facts, namely, the arrival by mail of a reply purported to be from the addressee of a prior letter duly addressed and mailed, are sufficient evidence of the reply's genuineness to go to the jury."

The author uses this further language in commenting upon this principle: "Such a rule, varying slightly in the phraseology of different judges, seems now to be universally accepted."

In the case at bar, there was no jury, but the rule applies with equal effect. A material question to be first answered is: When is a letter proved to have been sent or mailed, so that such proof of sending or mailing will be a foundation authorizing the admission in evidence of a reply letter thereto? We are of the opinion that it is the general rule that where a letter is offered in evidence, which letter is claimed to be an answer to a previous letter, before such letter which is the answer can be received in evidence, there must be proof that the pre-

vious letter was written or mailed. National Acci. Soc. v. Spiro, 24 C. C. A. 334, 47 U. S. App. 293, 78 Fed. 774. If it is shown that the previous letter is written and mailed in the usual and regular manner, with sufficient postage prepaid, the reply received in due course of the mail may be treated as prima facie genuine. The statement in a letter offered, that it is in answer to a letter previously received, does not of itself make the letter admissible. To so hold would dispense with the necessity of proof of the writing and mailing of the previous letter, and will also make the letter the proof of its own genuineness. This would not be the proper method of proof, and is not permissible. Smith v. Shoemaker, 17 Wall. 630, 21 L. ed. 717; Butterworth & Lows v. Catchcart, 186 Ala. 262, 52 So. 896.

This is one rule by which the genuineness of correspondence may be proved, but when proof is sought to be made under this rule, strict compliance with the requirements of the rule is necessary.

Another method of proof in such cases is to prove the genuineness of the letters, or, in other words, to properly authenticate them. For instance, if a letter has been written, direct proof that the letter was received by the person to whom it was addressed, and if a reply is received to such letter the genuineness thereof proved by showing that the signature to such letter is the genuine signature of the person who wrote it.

The plaintiffs have sought to establish their claim by the first method, and, in order to permit proof based upon the correspondence entirely, he must bring himself strictly within this first rule. It is certain that the rule should not be extended. To do so would afford too great an opportunity for fabrication and undue advantage. We are of the opinion that, where a person undertakes to show that he sent another a letter by mail, no presumption will arise that the letter so sent was received by the person to whom it was addressed unless it is shown that it was deposited in the postoffice or some department thereof, as, for instance, in a mail box on a rural route, and that such letter was properly addressed and stamped with sufficient postage. Trezevant v. Powell, 61 Tex. Civ. App. 449, 130 S. W. 234. It is conceivable that a person could write a letter to another and deposit it in the postoffice without stamping it and without placing sufficient postage thereon, and truthfully claim that he had addressed the letter

to the party at his pro] or address and deposited it in the United States mail. In order for a reply to a letter written to have a proper foundation for its admissibility laid, it must first appear that the letter written was properly addressed to the party at his known or usual address and properly stamped with the requisite amount of postage thereon and deposited in the postoffice or in some department thereof authorized to receive letters for the purpose of forwarding them to the parties to whom they are addressed. Has the plaintiff brought himself within this rule?

We think it advisable to quote some of the testimony in this regard:

Q. Mr. Kvale, did you have some correspondence with Daniel Keane?

A. Yes.

Q. State whether or not you wrote him a letter on March 17, 1915.

A. Yes.

Q. Have you a copy of that letter?

A. No.

Q. Have you the original letter?

A. No.

Q. Do you remember what you wrote about?

A. Yes.

Q. What did you write about?

A. I wrote and asked him if he would sell the land.

Q. What land?

A. If he would sell the quarter of land 160—21, about how much he would take for that. (The township and range named in this answer are evidently erroneous.)

Q. Do you remember whether that had reference to the N. E. $\frac{1}{4}$ 21–162–86?

A. Yes, sir.

It will be observed that this is the initial letter of the alleged transaction. It must also be observed that the plaintiff does not testify that such letter was addressed to the defendant at his known or usual address, or that such letter was deposited in the United States mail or in the postoffice or any department thereof authorized to receive such

letters, or that the postage was paid or the letter properly stamped,. in accordance with the rules of the United States postal laws and regulations. It appears to us, the proof must be thus first made before there is any proper foundation laid for the introduction of a reply of such letter. The proof explicitly showing that no such foundation was laid, the alleged reply to such letter was entirely inadmissible though the reply may have been received in the customary way through the United States mail.

Further testimony of the plaintiff is as follows:

Q. Did you write a letter in answer to this and exhibit 2?

A. Yes.

Q. Addressed to Daniel Keane at 642 Inglehart avenue, St. Paul?

A. Yes.

Q. Did you deposit it in the mails?

A. Yes.

Q. After that did you receive any further letters from Daniel Keane?

A. Yes.

Q. I show you exhibit 3 and ask you whether you received that envelop in the mail?

A. Yes.

Q. Along about the 10th to the 15th of April?

A. Yes.

Q. I show you exhibit 4 and ask you whether or not that is the letter contained in the envelop marked exhibit 3?

A. Yes.

Q. And you received this letter in the United States mail?

A. Yes, sir.

It will be observed that the plaintiff, in the letter which he testifies he wrote in answer to exhibit 2, does not show that such letter was stamped with sufficient postage, hence there is no presumption that the same was delivered to the addressee. The plaintiff having not shown that such letter was stamped with the proper amount of postage, for aught that appears in the testimony, the plaintiff might have written the letter and deposited it in the United States Postoffice without

the proper stamps or postage thereon, and, if so, the letter would not be delivered, and at all events it is certain there could arise no presumption of its delivery, and there is no foundation laid which would admit in evidence a reply to such letter. Further, in reference to the letter claimed to be written in answer to exhibit 2, the letter itself is not in evidence, neither is there any copy thereof in evidence, and there is no testimony as to what the contents of that letter was.

We think it must conclusively appear there is no foundation for the admission in evidence of exhibits 3 and 4. The tenor of the letter claimed to be written in answer to exhibit 2 is not in evidence, and there is no way to know whether the tenor of exhibit 3 is in answer to the tenor of the letter claimed to be written in answer to exhibit 2. It clearly appears that exhibit 4 was not properly received in evidence, there being no foundation for its reception.

With all the letters we have referred to, being concededly inadmissible in evidence, the letter, exhibit 5, claimed to be written by the plaintiff in reply to exhibit 4, cannot be supported by exhibit 4 or any other preceding letters, and, standing alone, even if it were admissible, all that could be said of it would be that it is an offer by the plaintiff to purchase the land, which was declined by the defendant, if it is assumed that exhibit 6 is a letter signed by the defendant or under his authority, but exhibit 5 is subject to the same fatal error as exhibits 4 and 2. The testimony with reference to this letter, exhibit 5, does not show that it was deposited in the postoffice or the United States mail or any postage paid.

Testimony with reference to this letter is as follows:

Q. After receiving the letter of April 4th, did you write any letters to Daniel Keane?

A. Yes.

Q. Have you got the original letter?

A. Yes.

Q. You haven't got the letter you mailed to him, have you?

A. No.

Q. I will show you exhibit 5 and ask you if that is a copy of the letter you sent to Daniel Keane on April 14, 1916?

A. Yes.

Q. Díd you inclose the original letter in an envelop?

A. Yes.

Q. And addressed it to Daniel Keane at 642 Inglehart avenue, St. Paul?

A. Yes.

Q. After sending that letter did you receive any further letters from Daniel Keane?

A. Yes.

Q. I will ask you whether you received exhibit 7 in the mail?

A. Yes.

Q. About the 17th or 18th of April?

A. Yes.

Q. About that time?

A. Yes.

Q. And is exhibit 6 the letter that was contained in that envelop?

A. Yes.

It is apparent that there was no foundation laid for the introduction of exhibit 5, for the reasons we have above stated. This being true, exhibit 6, the reply, was certainly not admissible in evidence. Exhibit 8 was the check for $10 which was returned with exhibit 6.

Measured by the rule which we have set forth which governs the admission of correspondence and letters, the plaintiff has wholly failed to bring himself within said rule. It is also plainly evident that the rule is one with which it is not difficult to comply. It is also evident that it will not be wise to extend the rule further than it is, and permit letters and writings to be introduced in such a loose manner as to open wide the door for much evil, which might easily result from any further expansion of the rule enunciated.

The only writing offered in evidence to which there is a genuine signature of the defendant is exhibit 9, which is an affidavit verifying the answer. The plaintiff put on the stand three competent witnesses, who testified to this, in effect, that the signatures of the defendant to exhibits 9 and 6 were the same. This testimony can avail the plaintiff nothing; for, as we have seen, exhibit 6 was inadmissible, and therefore cannot be considered as part of the testimony; and even if it

were admissible, exhibit 6 and 9, standing alone, would not prove any contract between plaintiff and defendant.

We are of the opinion that all the letters and correspondence, for the reasons we have stated, should have been excluded. Being thus excluded, the plaintiff must necessarily fail in his proof of the contract alleged in the complaint. Having this view of the case, it is really unnecessary to pass upon the mental competency of the defendant to enter into the contract in question, but to entirely dispose of the case we will do so.

There is testimony on behalf of the plaintiff, that the defendant was, at the time in question, about seventy-seven years of age. During the months of March, April, and May, 1916, he was very sick, afflicted with heart trouble; he had two operations. There was testimony that he could not carry on a connected conversation, that he was ordered by the doctor not to speak, that his mind wasn't right, that he would talk on one subject and the next time he would forget all about it. This testimony was given by his wife. We think the testimony, in this regard, standing alone and undisputed, is sufficient to establish a want of capacity to execute a contract as important as the one under consideration, however, or, in fact, to execute any contract. Especially is this true when the great age of the defendant is taken into consideration, coupled with the undisputed afflictions with which he was suffering at the time in question. We are convinced that the mind of the defendant was so incapacitated as to be unable to comprehend the import and consequence of business transactions of the nature of the one under consideration, and he was not in such mental and physical condition, according to the testimony, to have capacity to enter into the contract under consideration.

It appears to us, for the reasons hereinbefore stated, that the plaintiff can never recover upon his alleged contract, if for no other reason than the incapacity of the defendant. This being true, a new trial could serve no useful purpose.

Judgment is reversed, and the District Court is instructed to enter a dismissal of the action, with costs in favor of the defendant.

ROBINSON, J. (concurring). This is an appeal from a judgment for the specific performance of an alleged contract to sell and convey

39 N. D.—37.

to the plaintiff a quarter section of land in Renville county. There is no just claim that any payment or tender of payment has ever been made to the defendant. The alleged agreement is all in letters which fail to show a completed contract by a letter dated St. Paul, March 23, 1916. Defendant invited plaintiff to make an offer for the land. By letter of April 7, defendant offers to accept $3,200, payable $250 when the deal is closed and $250 a year after 1916, with interest at 6 per cent. By letter of April 14, plaintiff writes defendant: "I have your letter of the 7th inst., and agree to pay you said price as per terms stated in your letter and inclose you check $10 in part payment. I ask you to have the contract executed and sent to me in duplicate form. I will sign same and return copy to you with $250 due on first payment."

The writing of this letter did not complete a contract or tender performance of the same. It was merely a modified offer to complete a contract on the terms stated in the letter. In answer by letter of April 17th defendant returned the check and called off the deal. The defendant had not offered to make and sign contracts for the sale of the land, and to send them in duplicate to plaintiff, and to receive his check in payment, of $10 or any sum. The offer of defendant was in legal effect to sign contracts for the sale of the land on cash payment of $250 at St. Paul. Defendant would have acted the part of a mere simpleton had he made contracts and sent them to Renville county without first receiving the cash payment.

The letters show merely an attempt to bargain for the sale of the land. There is no showing of any completed contract. There is no showing of facts or circumstances which appeal to the conscience of the court or give the plaintiff any equity.

The statute is that specific performance cannot be enforced against a party to a contract in cases following:

(1) If he has not received an adequate consideration for the contract; (2) if it is not as to him just and reasonable; (3) if his assent was obtained by any unfairness; (4) if his assent was given under the influence of mistake, misapprehension, or surprise.

In equity there is no property right more sacred than that of a man's title to land. Hence on a bald or naked contract, when no payment has been made and no possession given, no man should be

forced to sell or part with his title to land only on proof showing a just, equitable, and considerate contract. There is no such proof in this case. There is some proof that at the time of writing the letters, defendant was advancing in the seventies, and that he was in feeble health, and that his letters were written inadvisedly. It needs no evidence to show the folly and imprudence of an aged man selling a quarter section of good North Dakota land for $3,200 on cash payment of $250 and annual payments of $250.

The purchaser having once obtained possession of the land might use it for years and never make a second payment, and the cost of regaining the land might exceed the first payment. Such bald and improvident contracts do not appeal to equity, but in this case the proof failed to show the making of any contract.

Judgment reversed and action dismissed.