2005 ND 189

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Lyle J. NOORLUN, Defendant and Appellant.**

**No. 20040329.**

Supreme Court of North Dakota.

Nov. 9, 2005.

Rehearing Denied Dec. 20, 2005.

Birch Peterson Burdick, State's Attorney, Fargo, ND, for plaintiff and appellee.

Chad Rory McCabe, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Lyle J. Noorlun appealed from a judgment entered upon a jury verdict finding him guilty of nine counts of violating North Dakota securities law. We hold the trial court did not err in denying Noorlun's request to include additional language in a jury instruction, the court did not abuse its discretion in admitting five letters into evidence, there was sufficient evidence to sustain the convictions, and the statute of limitations did not bar Noorlun's prosecution. We affirm.

I

[¶ 2] Before her death in May 2002, Norma Jordee invested $250,000 with Noorlun in three promissory notes that were renewed at various times. There was evidence Jordee lived in Fargo, North Dakota, and issued a $170,000 check for a June 26, 1997 promissory note that was renewed on December 18, 1998; a $50,000 check for a November 6, 1997 promissory note that was renewed on May 5, 1999; and a $30,000 check for a September 14, 1998 promissory note that was renewed on March 13, 1999.

[¶ 3] The State claimed the renewals of the three promissory notes constituted the sale or offer to sell unregistered and non-exempt securities under N.D.C.C. ch. 10–04. By information dated December 17, 2003, the State charged Noorlun with three counts of selling or offering to sell unregistered or non-exempt securities to Jordee in Cass County on December 18, 1998, on March 13, 1999, and on May 5, 1999; three counts of acting as a security salesman or agent for those transactions without registering in North Dakota; and three counts of violating a cease and desist order issued by the North Dakota Securities Commissioner in January 1998.

[¶ 4] After a preliminary hearing on March 25, 2004, Noorlun moved to dismiss the prosecution. He claimed he did not sell or offer to sell unregistered or non-exempt securities to Jordee on the dates alleged in the information, and he merely renewed pre-existing promissory notes on those dates. He essentially claimed prosecution on the original notes was barred by the five-year statute of limitations in N.D.C.C. § 10–04–18, and the renewals of the original notes were not new transactions. The trial court denied Noorlun's motion to dismiss.

[¶ 5] At trial, there was evidence that Noorlun and Jordee had initially entered into a $170,000 promissory note on June 26, 1997, a $50,000 promissory note on November 6, 1997, and a $30,000 promissory note on September 14, 1998. The State

introduced evidence of typewritten letters purportedly signed by Noorlun and sent by him from Henderson, Nevada, to Jordee in Fargo, which indicated those promissory notes had been renewed on the dates alleged in the information. The State introduced evidence that neither the promissory notes nor the renewals were registered in North Dakota; neither Noorlun nor his company, Management Services, was a registered security agent in North Dakota; and the North Dakota Securities Commissioner had issued a cease and desist order against Noorlun and Management Services in January 1998. A jury found Noorlun guilty of all nine charges.

## II

[¶ 6] Noorlun contends the trial court erred in denying his request to include language in a jury instruction regarding renewals of promissory notes. Relying on *Liberty Nat'l Bank & Trust Co. v. Dvorak*, 199 N.W.2d 414 (N.D.1972), Noorlun argues the court's instruction on "notes" was incomplete because it did not explain the difference between a note and a renewal of a previous note. He claims any prosecution on the three original promissory notes was barred by the five-year statute of limitations in N.D.C.C. § 10–04–18(4). He essentially asserts the renewals of the previous notes were not new transactions, and any prosecution on those notes was also barred by that five-year statute of limitations.

[¶ 7] On appeal, we review jury instructions as a whole and consider whether they correctly and adequately advise the jury of the applicable law and do not mislead or confuse the jury. *State v. Jaster*, 2004 ND 223, ¶ 17, 690 N.W.2d 213. If jury instructions, when considered in their entirety, correctly advise the jury of the applicable law, there is no error even though a trial court refuses to submit a requested instruction that is a correct statement of the law, or even if part of the

instructions, standing alone, may be insufficient or erroneous. *Id.* We will reverse a conviction only if the instructions, as a whole, are erroneous, relate to an essential subject in the case, and affect a substantial right of the accused. *Id.*

[¶ 8] Under N.D.C.C. § 10–04–18(1), any person who willfully violates certain provisions of N.D.C.C. ch. 10–04, or an order by the securities commissioner under that chapter, or who engages in any act, practice, or transaction declared to be unlawful under that chapter is guilty of a class B felony. Section 10–04–10, N.D.C.C., prohibits a person from selling or offering to sell securities in this state unless registered as a dealer or salesman, and N.D.C.C. § 10–04–04 prohibits a person from selling, or offering to sell any unregistered or non-exempt securities in this state. Noorlun has not argued the promissory notes or renewals in this case were exempt securities under N.D.C.C. §§ 10–04–05 or 10–04–06. Section 10–04–02, N.D.C.C., defines "security" as "any note; ... evidence of indebtedness; ... or, in general, any interest or instrument commonly known as a 'security.'" Under N.D.C.C. § 10–04–02, "sale" or "sell" means "every sale or other disposition of a security or interest in a security for value, and every contract to make any such sale or disposition." An "offer for sale" or "offer to sell" means "every attempt or offer to dispose of, or solicitation of an order or offer to buy, a security or interest in a security for value." N.D.C.C. § 10–04–02. Under those definitions, we have consistently construed promissory notes to be securities. *See State v. Goetz*, 312 N.W.2d 1, 4–5 (N.D.1981); *State v. Weisser*, 161 N.W.2d 360, 365–66 (N.D.1968); *State v. Davis*, 131 N.W.2d 730, 732–33 (N.D.1964).

[¶ 9] Here, the trial court instructed the jury in language following N.D.C.C.

§ 10–04–02 on the definitions of security, sale or sell, and offer for sale or offer to sell. The court instructed the jury that it was unlawful to willfully sell or offer to sell securities in North Dakota unless the securities were registered or exempt and that persons who sell or offer to sell securities must register as a salesman or agent with the securities commissioner. The court instructed the jury on three counts of selling or offering to sell securities on the dates alleged in the information, three counts of acting as a security salesman or agent without registering as an agent in North Dakota, and three counts of violating a cease and desist order.

[¶ 10] In language from *Dvorak,* 199 N.W.2d at 416–17, the trial court also instructed the jury:

> The purpose of a renewal note is to extend the time the debtor has within which to pay his obligation. Whether the renewal note is actually a renewal or a new note depends upon the intention of the parties. A renewal signifies a substitution of the obligation on the same terms and conditions. In other words, the only change is an extension of time in which to pay the note.

> If the obligation changes, for instance the principal amount of the note is increased, the transaction is not a renewal. The transaction is a new obligation, a new note. We have stated a note is a security. The new note is subject to the North Dakota Securities Act, just as the original note was subject to the Act.

Noorlun claims the court erred in not including language in that instruction from *Dvorak,* at 416–17, to the effect that "a note is renewed when a new note evidencing the same obligation is executed and delivered by the maker to the holder of the old note."

[¶ 11] In *Dvorak,* 199 N.W.2d at 416–17, the issue was whether a guarantor's obligation under an initial promissory note was exonerated under N.D.C.C. § 22–01–15 when the debtor executed a second note without a guarantee by the guarantor. The second note was secured in part by the same collateral, and it substantially increased the principal debt and extended payments over a longer period of time. *Dvorak,* at 417. We held the second note altered the first note within the meaning of N.D.C.C. § 22–01–15, and exonerated the guarantor from any further liability on the first note. *Dvorak,* at 417. In reaching that conclusion, we decided the second note was not a renewal of the first note. *Id.* at 416–17. We quoted *Douglas County State Bank v. Sutherland,* 52 N.D. 617, 204 N.W. 683, Syll. ¶ 4 (1925), to define "renewed" to mean a "'note' is 'renewed', within the meaning of that term as used in ch. 91, S.L. 1921, when a new note evidencing the *same obligation* is executed and delivered by the maker to the holder of the old note." *Dvorak,* at 416–17. In deciding the second note was not a renewal of the first note, we said the purpose of a renewal note was to extend the length of time the debtor has to pay the obligation:

> Whether a new note is a renewal of another note depends upon the intention of the parties. A renewal signifies the substitution in place of one engagement of a new obligation on the same terms and conditions; that is, the re-establishment of a particular contract for another period of time. An obligation is renewed when the same obligation is carried forward by the new paper or undertaking, whatever it may be. There may be a change of parties. *There may be an increase of security, but there is no renewal unless the obligation is the same. What makes the renewal is an extension of time in which to discharge the old obligation.*

*Dvorak,* at 417 (quoting 11 Am.Jur.2d, *Bills and Notes* § 307, at 332).

[¶ 12] In *Douglas County*, 52 N.D. at 626, 204 N.W. at 685, a statute made it illegal for any person to take a renewal note without returning the original note unless the renewal note had written across it the words "renewed note." In an action on a second note, the plaintiff contended the statute did not apply because the second note was a new and independent obligation and not a renewal of the original note. This Court concluded the statute applied to the second note, stating the plaintiff treated the second note as a renewal note and "in any event, ... every renewal is a new and independent obligation in so far as concerns the original of which it is a renewal." *Douglas County*, 52 N.D. at 630, 204 N.W. at 687.

[¶ 13] Both *Dvorak* and *Douglas County* involved actions to recover on promissory notes rather than alleged violations of securities law, and contrary to Noorlun's claim that the renewals of the previous notes were not new transactions, *Douglas County* recognizes every renewal note is a new and independent obligation in relation to the original note. Moreover, although commercial concepts may provide a defense to criminal intent in some prosecutions, *see State v. Kraft*, 413 N.W.2d 303, 306–07 (N.D.1987), North Dakota securities law does not distinguish between a new note and a renewal for purposes of a securities violation. Rather, the issue under N.D.C.C. ch. 10–04 is whether, on the dates in question, Noorlun's conduct constituted a sale or offer to sell unregistered or non-exempt securities as defined in N.D.C.C. ch. 10–04. The court correctly instructed the jury on the definition of security, on sale or sell, and on offer for sale or offer to sell under that law, and the court's instructions adequately informed the jury on those issues. Had Noorlun been entitled to a defense based on his theory of renewal, his requested language was effectively included in the trial court's instruction from *Dvorak*, and any further

instruction on renewals was surplusage under N.D.C.C. ch. 10–04. We conclude the trial court did not err in refusing to instruct the jury in the language requested by Noorlun.

## III

[¶ 14] Noorlun argues the evidence was insufficient to sustain the convictions, because no rational fact finder could have found the alleged offenses occurred in North Dakota. He claims five typewritten letters with his purported signature at the bottom and Jordee's name and address at the top do not establish a crime was committed in Fargo, because there was no proof the letters were signed or mailed by him and no proof the letters were received by Jordee. He argues those letters lacked the necessary foundation for admission into evidence.

## A

[¶ 15] We reject Noorlun's claim the trial court erred in admitting the five typewritten letters into evidence. An adequate foundation may be established by testimony that identifies the evidence and establishes the competency, materiality, and relevancy of the evidence. *Erdmann v. Thomas*, 446 N.W.2d 245, 246 (N.D. 1989). Generally, before documentary evidence is admissible, it must be authenticated under a process establishing the relevancy of the document by connecting it with a person, place, or thing. *R & D Amusement Corp. v. Christianson*, 392 N.W.2d 385, 386 (N.D.1986); *State v. Haugen*, 392 N.W.2d 799, 801 (N.D.1986). In *Christianson*, at 386 (citations omitted), we said:

> N.D.R.Ev. 901(a) treats questions of authentication as matters of conditional relevance to be determined according to N.D.R.Ev. 104(b). The relevancy of a document is conditioned upon its authen-

ticity. Thus, when a document is offered, a judge must make a preliminary determination whether sufficient proof has been introduced to allow a reasonable fact finder to conclude the document is authentic; *i.e.*, it is what its proponent claims it to be. If so, the judge must admit the evidence and the question of its weight and prosecutive force is one for the jury.

A document may be authenticated by circumstantial evidence, including the events preceding, surrounding, and following the transmission of the writing. *Haugen*, 392 N.W.2d at 802. The circumstantial evidence also may include information in the contents of the writing which is known by the purported sender and the recipient. *Id.*

[¶ 16] Whether evidence should be excluded for lack of authentication is primarily within the trial court's sound discretion. *Erdmann*, 446 N.W.2d at 246; *Christianson*, 392 N.W.2d at 386. A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law. *State v. Bell*, 2002 ND 130, ¶ 6, 649 N.W.2d 243.

[¶ 17] Here, the State presented evidence from Joseph Mongelluzzo, an expert in handwriting comparison with twenty-seven years of experience. Mongelluzzo testified that he compared the signatures of the letters with known writing samples from Noorlun and concluded Noorlun signed the letters. The State also introduced testimony by Fargo Police Detective Jim LeDoux indicating Jordee provided the letters to him at her residence in response to a request for information pertaining to her involvement with Noorlun. The information in the letters also supports a determination that Noorlun sent the letters to Jordee in Fargo. We con-

clude the foundational evidence was sufficient to establish Noorlun signed and sent the letters to Jordee and she received them in Fargo.

[¶ 18] Noorlun's reliance on *Kvale v. Keane*, 39 N.D. 560, 168 N.W. 74 (1918), is misplaced. *Kvale* was decided in 1918, well before this Court adopted the rules of evidence in 1977. *Kvale* involved a specific rule for authentication of a reply letter in the context of an issue about the formation of a contract. *Kvale*, 39 N.D. at 571–73, 168 N.W. at 76–78 (quoting 3 Wigmore on Evidence § 2153 (1904)). *See People v. Rosenbloom*, 119 Cal.App.Supp. 759, 2 P.2d 228, 232–33 (1931) (holding letter inadmissible under rule for reply letters). In addition to the specific rule for reply letters, Professor Wigmore's 1904 treatise also explained that documents may be authenticated by evidence of a comparison of handwriting samples. *See* 1 Wigmore on Evidence, at §§ 99, 383; 3 Wigmore on Evidence, at § 2131. Our law recognizes that circumstantial evidence may be used to authenticate documents, *see Haugen*, 392 N.W.2d at 802, and *Kvale* does not control the foundational requirements for the admission of the letters in this case.

[¶ 19] The trial court's decision to admit the letters into evidence was not arbitrary, unreasonable, or unconscionable, and the court therefore did not abuse its discretion in admitting those letters into evidence.

**B**

[¶ 20] We also reject Noorlun's claim there was insufficient evidence to sustain the convictions. In an appeal challenging the sufficiency of the evidence, we look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. *State v. Knowels*, 2003 ND 180, ¶ 6, 671 N.W.2d

816. A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt. *Id.* In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses. *State v. Klose*, 2003 ND 39, ¶ 19, 657 N.W.2d 276. A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts. *State v. Steinbach*, 1998 ND 18, ¶ 16, 575 N.W.2d 193. A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.* Moreover, a jury may find a defendant guilty even though evidence exists which, if believed, could lead to a not guilty verdict. *State v. Wilson*, 2004 ND 51, ¶ 9, 676 N.W.2d 98.

[¶ 21] Section 10–04–04, N.D.C.C., prohibits any person from selling or offering to sell unregistered or non-exempt securities in this state. Section 10–04–10, N.D.C.C., prohibits an unregistered agent from selling or offering to sell any securities within or from this state. The trial court instructed the jury on those elements of the crime for securities violations. Jordee died before the information was filed in this case, and she did not testify at trial. The jury nevertheless heard evidence that Jordee had lived in Fargo, and her checks for the initial promissory notes stated a Fargo address and included cancellation notations from Noorlun's bank in Nevada. The jury also heard evidence that the typewritten letters were signed by Noorlun and addressed to Jordee in Fargo. Those letters referred to the three original promissory notes, and the renewals of those notes on the dates

alleged in the information. The State also introduced testimony from Detective Le-Doux indicating Jordee provided the letters to him at her residence in response to a request for information pertaining to her involvement with Noorlun. There was sufficient circumstantial evidence, viewed in the light most favorable to the verdict, from which the jury could have rationally concluded that Jordee received Noorlun's letters in Fargo, and Noorlun offered to sell her or sold her securities on the dates alleged in the information in violation in N.D.C.C. ch. 10–04. We conclude the circumstantial evidence was sufficient to establish Noorlun was guilty of securities violations in North Dakota on the dates alleged in the information.

## IV

[¶ 22] Noorlun argues the five-year statute of limitations in N.D.C.C. § 10–04–18(4) barred the prosecution of six counts charged in the information. He contends the State had no jurisdiction or authority to file a criminal information under N.D.R.Crim.P. 7(a) until after the preliminary examination that was held on March 25, 2004. Noorlun thus rationalizes the information was not properly filed until after the March 25, 2004 preliminary examination, and the five-year statute of limitations barred prosecutions for the six counts relating to the December 18, 1998 note and the March 13, 1999 note.

### A

[¶ 23] Rule 3(a), N.D.R.Crim.P., and its accompanying explanatory note generally provide that a complaint is the initial document for charging a person with a misdemeanor or felony. *See also* N.D.R.Crim.P. 7(a) and explanatory note ("even though a felony is initially charged by complaint, the subsequent prosecution must be by indictment or information").

Here, the State initially charged Noorlun with nine felonies by information filed in the district court on December 17, 2003, within the five-year statute of limitations of N.D.C.C. § 10–04–18(4), which provides "[a]n information must be filed or an indictment must be found under this chapter within five years after the alleged violation." Chapter 29–04, N.D.C.C., generally deals with limitations in criminal actions, and N.D.C.C. § 29–04–05, provides:

> *When action is commenced.* An information is filed or an indictment found within the meaning of this chapter when it is presented, if an information, by the state's attorney or person appointed to prosecute, or, if an indictment, by the grand jury, in open court, and they are received and filed, or if a complaint, when filed by a magistrate having jurisdiction to hear, try, and determine the action.

[¶ 24] In *State v. Dimmler*, 456 N.W.2d 297, 298–99 (N.D.1990), we affirmed the dismissal of a criminal information charging the defendant with theft of property, holding the prosecution was barred by the three-year statute of limitations in N.D.C.C. § 29–04–02. In *Dimmler*, at 297–98, on August 8, 1989, the State charged the defendant by criminal complaint with theft of property allegedly occurring on October 6, 1986. The complaint was signed by the state's attorney and a county judge. *Id.* at 297. After a preliminary examination on September 20, 1989, a magistrate found sufficient probable cause to hold the defendant on the charge. *Id.* at 298. After an arraignment on December 7, 1989, the State filed a criminal information against the defendant on that date. *Id.* The defendant moved to dismiss the charge under the three-year statute of limitations in N.D.C.C. § 29–04–02, which

then provided an information for any felony must be filed within three years after its commission.[1] *Dimmler*, at 298. The district court granted the defendant's motion to dismiss, concluding the information was not filed within three years of the commission of the alleged felony. *Id.*

[¶ 25] On appeal, we concluded the State filed the information more than three years after the defendant allegedly committed the theft of property, and the action was barred by the three-year statute of limitations. *Dimmler*, 456 N.W.2d at 298. We rejected the State's argument that the filing of the complaint satisfied the statute of limitations, concluding although the criminal complaint was filed in county court within the limitation period, it was not filed by a magistrate having jurisdiction to hear, try, and determine the action within the meaning of N.D.C.C. § 29–04–05, because the defendant was charged with a felony rather than a misdemeanor and the county court did not have jurisdiction to try the felony. *Dimmler*, at 299.

[¶ 26] In *State v. Hersch*, 445 N.W.2d 626, 631 (N.D.1989), we concluded felony prosecutions against a defendant were commenced by the filing of informations in district court. We said felony complaints filed in county court were not sufficient to commence the prosecutions under N.D.C.C. § 29–04–05, because the county court did not have jurisdiction to hear, try, and determine the actions. *Hersch*, at 631.

[¶ 27] The underlying rationale of *Dimmler* and *Hersch* was that a felony complaint filed in a county court without jurisdiction to hear, try, and determine the action was insufficient to commence the action under N.D.C.C. § 29–04–05. How-

---

1. Section 29–04–02, N.D.C.C., now provides "[e]xcept as otherwise provided by law, a prosecution for any felony other than murder must be commenced within three years after its commission."

ever, the applicable law has changed since *Dimmler* and *Hersch* were decided, with the abolishment of county courts, effective January 1, 1995. *See* 1991 N.D. Sess. Laws ch. 326, §§ 203–204. We conclude *Dimmler* and *Hersch* do not control the resolution of this issue.

[¶ 28] Under N.D.C.C. § 29–01–13(4), an information is an accusation in writing charging a person with a crime or public offense, signed and verified by some person and presented to and filed in the district court. In *State v. Buehler*, 125 N.W.2d 155, 158 (N.D.1963), this Court held that a filing of a criminal complaint was equivalent to an information for purposes of satisfying the state constitutional requirement that every criminal prosecution for a misdemeanor be by indictment or information. Under *Buehler*, a complaint and an information may be equivalent. Here, the information was filed in district court on December 17, 2003, within the five-year statute of limitations in N.D.C.C. § 10–04–18(4). On its face, the information does not show that the prosecution is barred by the statute of limitations. *See Hersch*, 445 N.W.2d at 629 (stating information that shows on face a prosecution is barred by the statute of limitations fails to state a public offense and may be noticed for the first time on appeal). An arrest warrant was issued by a district court judge with jurisdiction to hear, try, and determine the action under N.D.C.C. § 29–04–05. The information contained the same essential facts as would be alleged in a complaint and was accompanied by an affidavit of probable cause subscribed and sworn before a notary public. Although the information was filed before a preliminary examination was held, the fact a preliminary examination was neither had nor waived does not invalidate an information unless the defendant objects before entering a plea. N.D.C.C. § 29–09–02(3). *See State v. Rudolph*, 193 N.W.2d 237, 242 (N.D.1971). Noorlun entered a not guilty plea without objecting to the information. The information was not invalid under N.D.C.C. § 29–09–02(3), and we reject Noorlun's claim that an information could not be filed under N.D.R.Crim.P. 7(a) until after a preliminary examination was held.

[¶ 29] Under these circumstances, we conclude the information received and filed in district court on December 17, 2003, was sufficient to commence the action against Noorlun under N.D.C.C. § 29–04–05, within the five-year statute of limitations in N.D.C.C. § 10–04–18(4). We therefore conclude the State's prosecution of Noorlun is not barred by the statute of limitations.

### B

[¶ 30] Noorlun claims his trial counsel was ineffective because he did not move to quash the defective information under N.D.C.C. § 29–09–02(3). A defendant claiming ineffective assistance of counsel must establish counsel's performance was deficient and counsel's deficient performance prejudiced the defendant. *State v. Palmer*, 2002 ND 5, ¶ 11, 638 N.W.2d 18. In *Palmer*, at ¶ 11, we said "[t]o demonstrate prejudice, the defendant must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, and the defendant must specify how and where trial counsel was incompetent and the probable different result." A claim of ineffective assistance of counsel ordinarily should be raised in a post-conviction proceeding so the parties can fully develop a record on the issue of counsel's performance and its impact on the defendant's case. *Id.* at ¶ 12. When ineffective assistance of counsel is raised on direct appeal, we will review the record to determine if counsel was plainly defective. *Id.* If we cannot

conclude that assistance of counsel was plainly defective and if no other grounds for reversal exist, we will affirm the judgment without prejudice to the defendant pursuing a claim for ineffective assistance of counsel at a post-conviction proceeding where an adequate record can be developed. *State v. Strutz,* 2000 ND 22, ¶ 26, 606 N.W.2d 886.

[¶ 31] In our examination of this record, we cannot conclude that assistance of counsel was plainly defective. There is some evidence Noorlun was not in North Dakota for significant periods of time between the dates of the notes and the filing of the information on December 17, 2003. The time of a defendant's absence from the State is not counted as part of the limitation period under N.D.C.C. § 29–04–04. Noorlun's trial counsel's failure to object to the lack of a preliminary examination did not invalidate the December 17, 2003 information under N.D.C.C. § 29–09–02(3). Although Noorlun's appellate counsel claims Noorlun's trial counsel's failure to move to quash the information constituted ineffectiveness of counsel on its face, trial counsel's conduct and the statute of limitations must be considered in the context of Noorlun's possible absence from the State. We affirm the judgment without prejudice to Noorlun to pursue an ineffective assistance of counsel claim at a post-conviction proceeding.

### V

[¶ 32] We affirm the criminal judgment.

[¶ 33] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.