DOUGLAS COUNTY STATE BANK, a Foreign Corporation, Respondent, v. W. H. SUTHERLAND, Angus Ferguson, E. A. Roach, Erick Erickson, Frank C. Multz, M. A. Wentland, F. E. Zink, Theodore Berglund, Appellants.

(204 N. W. 683.)

**Contracts — validity of contract is to be determined by lex loci where it is made.**

1. The question of the validity (that is, as to whether there is in fact a contract) of a contract is to be determined by the law of the place where it is made. If there was a valid contract under that law, then that contract is valid everywhere. If there was no valid contract under that law, then there is no valid contract anywhere.

**Bills and notes — note binding and effective when delivered; becomes binding when, nothing remaining to be done by either party, it is deposited in mail at direction of payee for transmission to him.**

2. A note becomes binding and effective when it is delivered, and it is delivered when, nothing more remaining to be done by either party, it is deposited in the mails at the direction of the payee for transmission to him.

**Bills and notes — statute relating to renewal of notes held to cover every renewal transaction consummated within state.**

3. Chapter 91, Sess. Laws, 1921 was enacted for the protection of the public, and was intended to cover every renewal transaction consummated in the State. Consistent with this legislative purpose, the term, "doing business," as used in the statute, means the completion of any transaction of the sort contemplated therein.

**Bills and notes — note is renewed when new note evidencing same obligation is executed and delivered by maker to holder of old note.**

4. A note is "renewed," within the meaning of that term as used in chapter 91, Sess. Laws, 1921, when a new note evidencing the same obligation is executed and delivered by the maker to the holder of the old note.

**Contracts — illegality not appearing on face of complaint, must be pleaded to be available as defense; becomes available if not pleaded; becomes available if facts showing illegality disclosed by record.**

5. Where the illegality of a contract upon which suit is brought does not

Note.—(1) Validity of contract as determined by lex loci, see 5 R. C. L. 931; 1 R. C. L. Supp. 1556; 5 R. C. L. Supp. 309.

(2) Deposit in mail as delivery of note, see 3 R. C. L. 860; 1 R. C. L. Supp. 904.

(5) Pleading illegality of contract, see 21 R. C. L. 553; 3 R. C. L. Supp. 1167; 4 R. C. L. Supp. 1420.

appear upon the face of the complaint, the illegality must be pleaded in order to be available as a defense. But when, though not pleaded, the facts establishing the illegality are disclosed by the record, the defense becomes available, for no court will consciously lend its aid for the enforcement of an illegal contract.

**Pleading — if during trial evidence to establish illegality of contract is received without objection, denying application to amend pleading to conform to proofs held error.**

6. Where the illegality of a contract upon which suit is brought is not pleaded as a defense, but during the course of the trial evidence tending to establish that the contract is illegal is received without objection, it is error to deny an application to amend the pleadings to conform to the proofs in that respect.

Opinion filed May 23, 1925.

Appeal and Error, 4 C. J. § 2757 p. 800 n. 54; § 2920 p. 945 n. 4; § 3183 p. 1165 n. 50. Bills and Notes, 8 C. J. § 153 p. 92 n. 63, 64, 65, 66, 67; p. 93 n. 68; § 333 p. 203 n. 59; § 335 p. 204 n. 83; § 626 p. 425 n. 11; § 628 p. 426 n. 26 New. Contracts, 13 C. J. § 23 p. 253 n. 57; § 891 p. 743 n. 79. Evidence, 22 C. J. § 87 p. 151 n. 95. Pleading, 31 Cyc. p. 448 n. 65.

Appeal from the District Court of Foster County, *Coffey*, J. Reversed.

*C. B. Craven* and *A. C. Lacy,* for appellants.

"A person cannot sue upon a note which is given for a certain consideration and then repudiate the consideration." Holbert v. Weber, 161 N. W. 560; Everts v. Selover, 44 Mich. 519.

"And it is held if a consideration is alleged it must be a sufficient one." 8 C. J. 869 and cases cited note 27; Holman v. Drake (Ga.) 107 S. E. 99.

"It was the duty of the court to submit to the jury, and give instructions thereon, any issues, theory or defense which the evidence tended to support." 38 Cyc. 1626 and cases cited note 69.

"Where the jury is neither clearly or definitely instructed on two or three theories of damages, or with respect to the law applicable in the case, new trial will be granted." Seaverns v. Condensed Milk Corp. 191 N. Y. Supp. 850.

"Delivery may be made by mail, and if so delivered at the request

of the payee, the delivery is complete when the instrument is placed in the mail, although never received." 8 C. J. 204 and cases cited note 83.

"And payee's request may be implied by his sending the note to the maker for his signature in another state without special instruction as to the manner of returning." Barret v. Doll, 16 R. I. 740, 27 Am. St. Rep. 777, 19 Atl. 530; 8 C. J. 90 and cases cited notes 45 and 46; Burr v. Beckler, 264 Ill. 230, L.R.A.1916A, 1049, 106 N. E. 206.

"The general principal is that the law of the place of performance is the law of the contract. This rule applies to the operation and effect of the contract, and to the rights and obligations of the parties under it. But the question of its validity as effected by the legality of the consideration, or of the transaction upon which it is founded, and in which it took its inception as a contract must be determined by the law of the state where the transaction was had. No other law can apply to it." Orr v. Orr, 157 Ky. 570, 163 S. W. 757.

"It may be conceded that for many purposes the law of the place of payment of the note ordinarily controls, but this rule is subject to exception. For instance, the question of the validity of a contract as effected by the legality of a past transaction, in consideration of which it is made and in which it took its inception as a contract is generally held to be governed by the law of the place where the transaction was had and not where the contract was executed or to be performed." Orr v. Orr, 157 Ky. 570, 163 S. W. 757.

"The validity of the contract, that is, the question whether the contract is a legal or an illegal one, is judged by the law on the subject in the State or Country in which the contract is entered into, the general rule being that a contract good where made is good everywhere, and that a contract invalid where made is invalid everywhere." 13 C. J. 253 and cases cited note 57.

"Parties cannot be allowed to defy our laws and recover upon a contract void from its inception, under our statute, by making the place of payment out of the state." Arbuckle v. Reaume (Mich.) 55 N. W. 808.

"The court will not take judicial notice of the unwritten law of a

foreign state or of the statute of another state or territory." 13 C. J. 258 and cases cited notes 7 and 8.

"And if a contract is void by the lex fori, it devolves on the party seeking to sustain it, to show that it is valid by the law of the place of making." 13 C. J. 258 and cases cited note 13.

"The rule is that if a plaintiff in order to make out his cause of action is required to show that the contract sued upon is for any reason illegal, the court should not enforce it, whether pleaded as a defense or not." School Dist. v. Scheidley (Mo.) 60 Am. St. Rep. 576.

"Where the plaintiff allows testimony on a point, which should have been especially pleaded, without objection or exception, he waives his right to object." Earnshaw v. McHose, 40 Fed. 589; Moore v. Campbell (Cal.) 13 Pac. 689; Hughes v. Wheeler (Cal.) 18 Pac. 386; Feilder v. Motz (Kan.) 22 Pac. 561.

"By failing to object the plaintiff is deemed to have consented to the trial of all issues proved by the evidence so introduced and the admission of evidence outside the issues, without objection has the effect of enlarging the pleadings so as to include issues so raised." Beach v. Wakefield (Iowa) 76 N. W. 88; 31 Cyc. 754 and cases cited notes 69 and 70; Huston River Canal Co. v. Reid (Iowa) 53 So. 887; 18 2d Decen. Dig. title Pl. § 427.

*Kelly & Morris,* for respondent.

"There is no particular form in which consideration must be alleged where it is necessary. An allegation that the instrument sued on was given 'for value received' is ordinarily sufficient."

"Where the consideration must be alleged it is not sufficient to allege that the note was given in renewal of a note for the same amount against the same parties, but the original consideration must be alleged. If a consideration is averred it must be shown to be a sufficient one." 8 C. J. § 1137, and cases cited.

"Credit is confidence or trust reposed in one's ability to pay what he may promise." Abb. Law Dict.

"The ability to borrow on an opinion conceived by the lender that he will be repaid." Bouvier's Law Dict.

"Credit is the capacity of being trusted." People v. Wassevogle, 77 Cal. 173, 19 Pac. 270.

"The credit of an individual is the trust reposed in him by those

who deal with him, that he is of ability to meet his engagements; and he is trusted because through the tribunals of the country he may be compelled to pay. The credit of a government is founded on a belief of its ability to comply with its engagements, and a confidence in its honor that it will do that voluntarily which it cannot be compelled to do." Owen v. Branch Bank, 3 Ala. 267.

"If there is no proof whatever tending to prove the agency, the act may be excluded from the jury by the court. But if there is any evidence tending to prove the authority of the agent, then the act cannot be excluded from them, for they are the judges of the sufficiency and weight of the testimony." Lake Grocery Co. v. Chiostri, 34 N. D. 386, 158 N. W. 998.

"The question of when a prima facie case has been established is a question of law for the court." Ibid.

"The term 'renewal' as applied to a note means the re-establishment of the particular contract for another period of time." Lowry National Bank v. Fickett, 122 Ga. 489, 50 S. E. 396.

"It means to re-establish a particular contract for another period of time, to restore to its former conditions an obligation on which the time of payment has been extended." Kedey v. Petty, 54 N. E. 798, 153 Ind. 179.

"A renewal is the substitution of a new right or obligation for another of the same nature. The word be not a word of art nor having any legal or technical signification. Another definition is that it is a change of something old for something new." Sponhaur v. Malloy, 21 Ind. App. 287, 52 N. E. 245; 7 "Words & Phrases," p. 6086.

"Renewal of a negotiable bill or note is regarded simply as a prolongation of the original contract." Koehler v. Hussey, 57 S. W. 241.

"The great weight of authority holds that the substantive questions of liability of and defenses available to the maker or acceptor of a bill or note, is governed by the law of the place where the bill or note is payable." First Nat. Bank v. Doeden (S. D.) 113 N. W. 81; Bailey v. Devine, 123 Ga. 653, 107 Am. St. Rep. 153; Baird v. Vines, 18 S. D. 52, 99 N. W. 89; Arden Lbr. Co. v. Henderson Iron Works & Supply Co. 83 Ark. 240, 103 S. W. 185.

"In the absence of proof as to the law of another state by which a contract is to be enforced, the common law and not the statute law of

the state where the suit is brought will be applied." Cherry v. Sprague (Mass.) 67 L.R.A. 33.

"The term 'transacting' or 'doing business' as used in laws of this character, implies continuity and does not mean a single isolated transaction done within the borders of the state without any purpose of engaging generally in the carrying on of its business here." Hart-Parr Co. v. Rob Lawrence Co. 15 N. D. 61, 106 N. W. 406.

"As the Statute of Fraud affects only the remedy upon the contract, giving the party sought to be charged upon it a defense to an action for that purpose, if the requirements of the statute be fulfilled, it is obvious that he may waive such protection; or rather that, except as he undertakes to avail himself of such protection, the contract is perfectly good against him." Erickson v. Wiper, 33 N. D. 193, 157 N. W. 592; Groff v. Cook, 34 N. D. 126, 157 N. W. 973.

"If the illegality of the contract sued on or the absence of the right to sue, does not appear on the face of the complaint, the facts showing the illegality or absence of right to sue must be pleaded as a defense." Hart-Parr Co. v. Rob Lawrence Co. 15 N. D. 63.

NUESSLE, J. This suit was brought to recover on a promissory note. The defendants other than Sutherland are endorsers thereon.

The complaint sets out the making, execution and delivery of the note by Sutherland, the endorsement thereof by the other defendants for accommodation of the maker, and the nonpayment of the note.

The answering defendants, for their amended answer, deny generally the allegations in the complaint; and further answering, allege that they conditionally endorsed a note similar to that set out in the complaint; that the condition was not complied with; that no demand was ever made for the payment of the note; that the same was never presented to the defendants; that no notice of dishonor or notice of protest was ever given to the defendants, and that such notices were not waived.

It appears that the defendant Sutherland lived in or near the little village of Bordulac, Foster county, North Dakota. He conceived the idea that Bordulac could be made a great and prosperous city. He sold this idea to a number of business men and farmers of that vicinity. In order to bring this transformation to pass, he purposed erecting

various buildings and establishing various industries in the village. He needed capital to do this, and persuaded the other defendants herein to assist him in financing his scheme. To that end he procured them to sign the following document denominated a letter of credit:

"Bordulac, N. D. April 1st 1919.

Whereas, W. H. Sutherland a resident of Bordulac, N. D. for the purpose of establishing a larger credit in the amt of $6500.00 (Six Thousand Five Hundred dollars), same to pay for an electric lighting plant at Bordulac, N. D. to light the city of Bordulac, N. D. and building or buildings to house the same.

The proposed buildings to consist of one one story building 32 x 64 feet with 8 foot post also containing a concrete floor.

One two story frame building 30 x 60 feet with a full basement.

The firms' names occupying said buildings to be The Lucky Strike Utilities Co. A corporation incorporated under the state laws of N. D. for the purpose of operating an electric light plant a Garage and to handle the Kewanee Private Utilities line of water system also heating plants.

The Lucky Strike Live Stock Co., a partnership firm for the purpose of operating a meat market and general live stock business also a restaurant and temporary hotel.

We the undersigned will not be liable for such establishment of said credit until 10 (Ten) Men of a business rating of no less a rating than $10,000.00 (Ten Thousand Dollars).

The money obtained by such credit shall be handled by the Bordulac State Bank and such buildings as are erected and property acquired by said W. H. Sutherland shall be held by said Bordulac State Bank as collateral to said credit for the term of one year from date of the establishment of such credit." Sutherland took the letter of credit to the bank at Bordulac and sought to borrow $6500.00 on his note by means of it.

The plaintiff, Douglas County State Bank, is a banking corporation located at Alexandria, Minnesota. For some years it had been placing some money in Foster county, North Dakota. Landeene, the president of the Douglas County Bank, was a stockholder in the Bordulac bank. When the Bordulac bank received Sutherland's note and letter of credit it sent them forward to the plaintiff bank with an inquiry as to whether

that bank could and would make such a loan. The plaintiff bank wrote back indicating its willingness to make the loan to Sutherland, but took exception to the letter of credit and said it would require Sutherland's note to be endorsed by the signers thereon. It enclosed a form of note meeting with its requirements and asked the Bordulac bank to procure the signature and endorsement thereof. The Bordulac bank advised Sutherland as to the requirements of the Alexandria bank and handed him the note. Sutherland executed this note and procured nine endorsers, including the defendants. This note, known in the record as Exhibit 3, is with endorsements as follows:

Alexandria, Minn. May 3, 1919.                              No. 25136

One year 191– after date, without grace, for value received I promise to pay to the order of Douglas County State Bank at its office Sixty Five Hundred & no/100 Dollars, $6500.00; with interest thereon at the rate of 8 per cent per annum from date until paid; interest payable annually.

Extended to
Extended to

                                                      W. H. Sutherland.

P. O. Bordulac, N. D.

(Endorsements)

For value received we hereby waive presentment, demand, protest and notice of protest on the within note.

                                        Angus Ferguson
                                        E. A. Roach
                                        W. A. Wentland
                                        I. T. Harbottle
                                        Theodore Bergland
                                        Erick Erickson
                                        Chas Zink
                                        Franz E. Zink
                                        F. C. Multz

| Paid | | 6500 |
| --- | --- | --- |
| Sept. 4–19 | 1872.61 | 4627.39 |

Sutherland delivered this note to the Bordulac bank which in turn

sent it forward to the Alexandria bank, and the consideration of $6500.00 was transmitted to the Bordulac bank to the credit of Sutherland. All of the funds so placed to his credit were used by Sutherland in carrying out his project, excepting $1872.61, which was thereafter paid to the plaintiff and endorsed upon the note.

Sutherland's project was not successful. The note was not paid at maturity. The plaintiff sought to make collection, but was unable to do so. In May, 1920 there was an attempt to renew the obligation but this was not successful. Finally in the fall of 1921 the plaintiff put the note in the hands of its collectors, and on October first, 1921 the note on which this action is brought was executed, endorsed and turned over to the plaintiff. This note with endorsements was as follows:

Alexandria, Minn., October 1st, 1921.        No. 27753.

November 1st, 1922 after date, without grace, for value received I promise to pay to the order of Douglas County State Bank at its office Fifty Five Hundred Forty and 63/100 Dollars, $5540.63, with interest thereon at the rate of 8 per cent per annum from date until paid; interest payable annually

Extended to

Extended to

                         W. H. Sutherland.

P. O. Bordulac, N. Dak.

(Endorsements.)

For value received we hereby guarantee the payment of the within note at maturity, or at any time thereafter with interest at the rate of 8 percent, per annum until paid, waiving demand, notice of nonpayment and protest.

                      Angus Ferguson
                      E. A. Roach
                      Erick Erickson
                      Frank C. Multz
                      M. A. Wentland
                      F. E. Zink
                      Theodore Berglund

9/22/22 Pd by rent money, $192.78.

It was not paid and this action resulted. The cause was tried to a jury which returned a verdict in favor of the plaintiff.

After plaintiff had rested, and while the defendants were offering evidence in support of their defenses as pleaded, plaintiff produced the original note, Exhibit 3. Exhibit 3 was not returned to the makers at the time Exhibit 1, the note in suit, was executed and delivered to it. There was no endorsement across the face of Exhibit 3 to in any way indicate that the obligation had been renewed. At the close of the whole case the defendants moved for a dismissal on the ground that the record then disclosed that the note in suit was a renewal of Exhibit 3, and that Exhibit 3 was not endorsed as renewed, as required by the provisions of Chapter 91, laws of 1921. This motion was denied. The defendants thereupon asked for leave to amend their answer to conform to the proofs as made in the record and by said amendment to set out the facts with reference to the failure to so mark the note Exhibit 3. This motion also was denied.

The jury returned a verdict for the plaintiff. Judgment was entered thereon. Thereafter the defendants moved for a new trial, specifying various grounds therefor, including the rulings above pointed out. This motion was denied. The defendants thereupon perfected this appeal from the judgment and from the order denying their motion for a new trial.

The record is voluminous. Numerous errors are specified and assigned. We think that it will be unnecessary to refer to all of them in this opinion for the reason that we are agreed that there must be a reversal on account of the rulings of the court with reference to the point made on the motion for dismissal at the close of the case and the application for leave to amend the answer. On the facts as disclosed by the record, the case, in our judgment, depends upon the construction and application of chapter 91, Sess. Laws 1921. This Chapter reads as follows:

"Section 1. That it shall be illegal, hereafter, for any person, or corporation, State or National Bank, doing business in the State of North Dakota, to take from any debtor or other person obligated upon a promissory note, any renewal note therefor without returning the promissory note renewed, unless there be written or printed across the renewed note the words "Renewed note.""

"Section 2. Any promissory note given in renewal of a previous promissory note shall be of no force or effect unless given in conformity with Section 1 hereof.

"Section 3. All acts and provisions of law conflicting with this enactment are repealed.

"Section 4. Emergency. Whereas, there are many banks, corporations and persons who and which have taken promissory notes for renewal purposes, and which notes have fallen into the hands of innocent persons and become collectible twice, an emergency exists and this Act shall take effect and be in full force and effect from and after its passage and approval."

The plaintiff insists that this statute is immaterial to the case for the reason, first, that the note sued upon is a Minnesota contract; second, that the plaintiff is a foreign corporation and was not doing business in the State of North Dakota within the meaning of the term as used in the statute; third, that the note sued upon was not a renewal note but a new independent contract and obligation, and that it had been constructively returned; and fourth, in any event the defendants, in order to raise a defense under the Statute, were required to plead it, and having failed to do so, such defense was waived.

1. The question of the validity (that is, as to whether there is in fact a contract) of a contract is to be determined by the law of the place where it is made. See Scudder v. Union Nat. Bank, 91 U. S. 406, 23 L. ed. 245; McGarry v. Nicklin, 110 Ala. 559, 55 Am. St. Rep. 40, 17 So. 726; Burr v. Beckler, 264 Ill. 230, L.R.A.1916A, 1049, 106 N. E. 206, Ann. Cas. 1915D, 1132; Cockburn v. Kinsley, 25 Colo. App. 89, 135 Pac. 1112; Lovell v. Boston & M. R. Co. 75 N. H. 568, 34 L.R.A.(N.S.) 67, 78 Atl. 621; Wharton, Conf. L. 3d ed. §§ 427e and 427k; 3 R. C. L. p. 856; 13 C. J. 253. See also note in 26 L.R.A.(N. S.) 764. It thus becomes necessary to consider the first contention raised by the plaintiff that the contract here involved was a Minnesota contract and that the statute, chapter 91, Sess. Laws 1921, can have no application. The defendant urges that it must be presumed that the Minnesota law is the same as that of North Dakota, therefore, whether the contract is a Minnesota contract or a North Dakota contract can make no difference. But there is no such presumption as the defendant contends for. On the contrary, since there is no proof as to the Minne-

sota law, the presumption is that the common law there prevails. See § 7936, subsec. 41, Comp. Laws, 1913; Hanson v. Great Northern R. Co. 18 N. D. 324, 138 Am. St. Rep. 768, 121 N. W. 78; Cosgrave v. McAvay, 24 N. D. 343, 139 N. W. 693; Wilson v. Kryger, 29 N. D. 28, 149 N. W. 721; Pratt v. Pratt, 29 N. D. 531, 151 N. W. 294.

The plaintiff is a Minnesota corporation. The contract in question was dated in Minnesota. It was to be performed, that is, the note was to be paid, in Minnesota. It appears that the original note was in fact signed by the makers and by the endorsers in North Dakota. The note as thus signed was drawn by the plaintiff and sent to the Bordulac bank to be executed. When the instrument was delivered it became binding and effective as against the makers and endorsers. See § 5891, Comp. Laws, 1913. Whether the Bordulac bank was the agent of the plaintiff at the time of the execution of the original instrument to receive that instrument for it is immaterial, for it is undisputed that it was mailed to the plaintiff from North Dakota. It was so mailed at the direction of the plaintiff. Nothing more remained to be done by either party. After the defendants thus parted with possession of the instrument they were bound thereby. The mailing completed the contract. See Burr v. Beckler, 264 Ill. 230, L.R.A.1916A, 1049, 106 N. E. 206, Ann. Cas. 1915D, 1132; McGarry v. Nicklin, 110 Ala. 559, 55 Am. St. Rep. 40, 17 So. 726; F. B. Hauck Clothing Co. v. Sharpe, 83 Mo. App. 385; Williston, Contr. § 97 and cases cited. The instrument in suit was also executed and endorsed in compliance with the requirements of the plaintiff. The original note fell due but was not paid. Thereafter it was sent by the plaintiff to its agent and attorney in North Dakota. There is a dispute as to the exact course that was followed in the transaction, but the evidence of the defendants tends to establish that the renewal was executed and endorsed by them in North Dakota and either delivered over to the representative of the plaintiff there or returned to the plaintiff by mail. Which course was followed is again immaterial. The instrument became effective as against the makers and endorsers when it was by them delivered. The facts are in dispute, so in considering the questions here presented we must assume that the delivery was made and the contract completed in North Dakota. But the plaintiff further insists that it was to be performed in Minnesota, and under the laws of Minnesota there was

no requirement such as is imposed by chapter 91, Sess. Laws. 1921; that since the contract was to be performed in Minnesota the law of the place of performance must determine the validity of the instrument, and therefore, the North Dakota law cannot apply. But we think it is clear that the law of the place where the contract was made must control. That law determines whether or not there was a contract. If there was a valid contract under that law then that contract is valid everywhere. If there was no valid contract under that law then there is no valid contract anywhere. See Continental Supply Co. v. Syndicate Trust Co. ante, 209, 202 N. W. 404; Frankel v. Hillier, 16 N. D. 387, 113 N. W. 1067, 15 Ann. Cas. 265; Burr v. Beckler, 264 Ill. 230, L.R.A.1916A, 1049, 106 N. E. 206, Ann. Cas. 1915D, 1132; McGarry v. Nicklin, 110 Ala. 559, 55 Am. St. Rep. 40, 17 So. 726; Cockburn v. Kingsley, 25 Colo. App. 89, 135 Pac. 1112; International Harvester Co. v. McAdam, 142 Wis. 114, 26 L.R.A.(N.S.) 774, 124 N. W. 1042, 20 Ann. Cas. 614; Williston, Contr. § 1792; Whart. Confl. L. 3d ed. § 427c. The purpose and policy of the legislature in enacting Chapter 91 is apparent. The legislature did not prohibit the renewing of notes, nor did it seek to hamper or interfere with commercial transactions. What it had in mind was the protection of the citizens of North Dakota from fraud. It purposed doing this by making illegal the renewal of notes unless the originals were returned to the makers, or if not returned, were endorsed with notice of the fact of renewal, and made such notes as should be taken contrary to this requirement of no force and effect. The legislature had no regard in doing this to the time when or the place where such contracts as it contemplated should be performed. It contemplated simply the protection of the citizens of the state against a particular form of fraud, and time and place of performance were immaterial.

2. Plaintiff further contends that it is a foreign corporation; that it had no place of business in North Dakota and was not *doing business* in the state within the meaning of that term as used in the statute, and, therefore, in any event, the statute did not apply to it. Plaintiff relies upon the case of State use of Hart-Parr Co. v. Robb-Lawrence Co. 15 N. D. 55, 106 N. W. 406, wherein it was held that a single business transaction in this state by a corporation which was not engaged in doing business generally here did not constitute "doing business" as

that term was used in the statute (Rev. Codes 1895, §§ 3261–3265), prescribing the duties of foreign corporations. We think, however, that the words, "doing business," as used in the statute there considered were used with a wholly different meaning from that implied in the statute here under consideration. Considering the purpose and policy of chapter 91, supra, it is clear that the words, "doing business," as used, mean any transaction of the sort contemplated in the act. The purpose of the statute is to protect the public against a particular form of fraud. (We do not intend to imply that any fraud was contemplated or attempted in this case). It was intended to cover any transaction consummated in North Dakota. The statute applies to individuals as well as to corporations. It is aimed at the transaction and not at the parties. To adopt the construction contended for by the plaintiff would largely defeat its purpose. But, in any event, the evidence in this case discloses that the plaintiff had numerous local transactions with residents of North Dakota, so many in fact that it maintained a collector in North Dakota to attend to its past due loans. Our conclusion is that if the transaction was completed in North Dakota the plaintiff was doing business here within the meaning of that term as used in the statute.

3. Plaintiff also insists that the statute does not apply for the reason that the note in suit is a new and independent obligation and not a renewal of the original note. The plaintiff itself did not so regard the transaction at the time the note in the instant case was taken. It had written the defendants demanding that the obligation be "renewed." All through the trial of the case, at least up to the time where the question was first raised as to the validity of the instrument in suit, the transaction was spoken of both by the witnesses for the plaintiff as well as those for the defendant as a renewal transaction. But, in any event, it seems to us that every renewal is a new and independent obligation insofar as concerns the original of which it is a renewal, and that the transaction here in question was exactly such a transaction as was within the purview of the legislature in enacting this statute. We do not believe that further consideration of this contention is necessary.

Plaintiff further insists that the statute was complied with and that there was a constructive return of the original obligation. This con-

tention is contrary to the evidence on behalf of the defendants. There is at least a question of fact as to whether such was the case. In considering the questions here raised under the record as made, we must assume that such was not the case.

4. There remains the contention that in order to invoke a defense under the statute the defendants were required to plead it, and having failed to do so thereby the defense was waved. Generally, we think, the rule is that where the illegality of the contract upon which suit is brought does not appear upon the face of the complaint, it must be pleaded in order that a defendant may take advantage of that defense. See Frankel v. Hillier, 16 N. D. 387, 113 N. W. 1067, 15 Ann. Cas. 265. But this rule is subject to certain exceptions, and one of those exceptions is that where the facts constituting such defense are shown by the record as made by the plaintiff, it may be taken advantage of even though not pleaded. That is exactly the instant case. The defendants were not chargeable with the duty of making the endorsement required by the statute. They had the right to assume that such endorsement had been made. The instrument was not in their possession. They could not be chargeable with knowledge of its condition. When during the course of the trial the instrument was produced in court in the possession of the plaintiff and, being offered in evidence, it appeared that the statute had not been complied with, and all the facts touching the defense later sought to be raised were offered and received in evidence without objection, we see no reason why such defense should not then be available to the defendant. If the defendants' version of the facts was correct, the effect of the statute was to render the transaction as disclosed illegal and the renewal so taken void, and no court will consciously lend its aid for the enforcement of an illegal contract. See Frankel v. Hillier, 16 N. D. 387, 113 N. W. 1067, 15 Ann. Cas. 265, and cases cited; Claflin v. United States Credit System Co. 165 Mass. 501, 52 Am. St. Rep. 528, 43 N. E. 293. See also note in 12 L.R.A. (N.S.) 575.

On the whole record the evidence clearly tended to support the defendants' contention that the instrument in suit was executed and delivered in North Dakota, and that it was of no force and effect by reason of plaintiff's failure to comply with chapter 91, Sess. Laws, 1921. At least the defendants were entitled to have the facts with reference to

the transaction determined by the jury, and the application for leave to amend to conform to the proofs as made should have been allowed. The refusal of the trial court to permit such amendment was prejudicial error.

The judgment must be reversed and in a new trial ordered.

BIRDZELL and BURKE, JJ., concur.

CHRISTIANSON, Ch. J. (dissenting). I agree with my associates that the place of contract governs in determining the validity of the note in suit; but I differ from them as to the place of the contract. In my opinion the place of contract of the note in suit was Minnesota and not North Dakota.

The plaintiff is a Minnesota corporation. Its sole place of business is in Minnesota. The note in suit was executed and delivered in renewal of a former note for which, according to the undisputed evidence, the plaintiff paid full value. The maker of the notes resided in North Dakota. He signed both the notes in this state and caused them to be transmitted to the plaintiff by mail. But both the former note and the note in suit, according to their terms, are Minnesota contracts. Both are dated at Alexandria, Minnesota, and made payable at plaintiff's place of business in that city. There was no appearance on the part of the defendant Sutherland, the maker of the note; but he made default. The only appearance made was by the defendant's guarantors, who, according to their contract "for value received" guaranteed the payment of the note at maturity "or at any time thereafter at interest at the rate of 8% per annum until paid, waiving demand of notice of nonpayment and protest."

Where the parties to a contract reside in different states, unless they take the trouble and incur the expense to go to the same place, one of them must manifest his assent in one state, and the other in another. And while there is a conflict in the authorities I believe that the better rule is that the place of performance, rather than the place where the last assent was given, should be deemed the place of contract. And that where a bill or note is executed in one state and made payable in another "It is governed as to its nature, validity, interpretation and effect by the law of the state or country in which it is payable, without

regard to the place where it was written, signed or dated, it being presumed that the parties contracted with reference to the law of that place, unless it clearly appears that the parties intended the contract should be governed by the law of the place where it was made or the law of some other place, or unless the parties elect or stipulate that the law of another state or country shall govern." 8 C. J. pp. 92, 93. See also 6 R. C. L. pp. 964, 965; 3 Enc. U. S. Sup. Ct. Rep. pp. 1051, 1052; 2 Whart. Confl. L. 3d ed. §§ 450, 451; Poole v. Perkins, 126 Va. 531, 18 A.L.R. 1509, 101 S. E. 240; Jefferis v. Austin, 182 Wis. 203, 196 N. W. 238; Farm Mortg. & Loan Co. v. Beale, 113 Neb. 293, 202 N. W. 877; Sykes v. Citizens Nat. Bank, 78 Kan. 688, 19 L.R.A. (N.S.) 665, 98 Pac. 206.

In this case there is no evidence and no contention that there was any intention to evade the provisions of chapter 91, Laws 1921, and that the parties resorted to the subterfuge of making an actual North Dakota contract a Minnesota contract in form so as to evade the operation of the laws of this state. I am of the opinion that under the undisputed evidence in this case the appellants by their contract of guaranty guaranteed the payment of a valid Minnesota note and that chapter 91, Laws 1921, has no application.

JOHNSON, J., concurs.