STATE OF OHIO, *ex rel.* SUPERINTENDENT OF BANKS, *v.* EUBANK.

1. JUDGMENT—FOREIGN COURT—JURISDICTION—WARRANT OF ATTORNEY.

   A judgment, confessed in Ohio by virtue of a purported warrant of attorney, must be respected if the warrant of attorney conferred the necessary jurisdiction on the Ohio court.

2. CONFLICT OF LAWS—VALIDITY OF CONTRACT.

   The validity of a contract is determined by the place of making.

Place where contract is made determined by law of forum, Restatement, Conflicts of Law, § 311; validity of contract by law of place where made, Restatement, Conflicts of Law, §§ 332-335.

Contract evidenced by renewal note made in place where old note is discharged, see Restatement, Conflicts of Laws, § 313.

3. SAME—PLACE OF MAKING A CONTRACT A QUESTION OF QUALIFICA-
TIONS.

The determination of the place of making a contract is a
question of ''qualifications'' and is a preliminary question
governed by the law of the forum.

4. CONTRACTS—PLACE OF MAKING.

Generally speaking, a contract is deemed to have been made
in the State where the last act necessary to make it a
binding agreement took place.

5. BILLS AND NOTES—PLACE OF MAKING A PROMISSORY NOTE.

In the case of a promissory note, the place of contracting is
where the note is first delivered for value.

6. CONTRACTS—OFFER AND ACCEPTANCE—POST OFFICE.

An offer authorizing a reply by mail is transformed into a
binding contract by posting an acceptance.

7. BILLS AND NOTES—EFFECTIVENESS—CONTRACTS.

In determining where a negotiable instrument becomes effec-
tive the principle of law that an offer authorizing a reply by
mail is transformed into a binding contract by posting an
acceptance is inapplicable since a negotiable instrument
becomes effective when first transferred for value.

8. SAME—RENEWALS—PLACE OF CONTRACTING WHERE CREDITOR RE-
CEIVES RENEWAL.

When a negotiable instrument is made in renewal of an earlier
contract, the intention of the parties is that only one of
the obligations shall be in force at one time and as the
new one comes into existence when the old one comes to an
end, the place of contracting of the renewal is where it is
received by the creditor.

9. SAME—TIME WHEN A RENEWAL NOTE BECOMES EFFECTIVE.

A renewal note becomes effective upon the actual substitution
of the new note for the old in the possession of the creditor.

10. JUDGMENT—FULL FAITH AND CREDIT—POWER OF ATTORNEY TO
CONFESS JUDGMENT.

Judgment rendered by Ohio court, based upon renewal note
containing in the same instrument a power of attorney to
confess judgment, sent to creditor in that State by Michigan
maker in renewal of note executed in Ohio, was entitled to full
faith and credit under the Constitution of the United States,
since it was an Ohio contract (U. S. Const. art. 4, § 1; 28
USCA, §§ 687, 688; 3 Comp. Laws 1929, § 14508).

Appeal from Wayne; Verdier (Leonard D.), J.,
presiding. Submitted June 11, 1940. (Docket No.

102, Calendar No. 41,068.)     Decided October 7, 1940.

Assumpsit by S. H. Squire, Superintendent of Banks of the State of Ohio, against Frank F. Eubank and others on a promissory note. Judgment for defendants. Plaintiff appeals. Reversed, and new trial ordered.

Donald F. Hyde, for plaintiff.

Beaumont, Smith & Harris (Charles H. McIntyre, of counsel), for defendants.

BUTZEL, J. The problem before us is the validity of a judgment confessed in Ohio by virtue of a purported warrant of attorney. The judgment must be respected if the warrant of attorney conferred the necessary jurisdiction on the Ohio court. First National Bank of Athens v. Garland, 109 Mich. 515 (33 L. R. A. 83, 63 Am. St. Rep. 597); Acme Food Company v. Kirsch, 166 Mich. 433 (38 L. R. A. [N. S.] 814); Jones v. Turner, 249 Mich. 403; Gordon v. Heller, 271 Mich. 240; Carroll v. Gore, 106 Fla. 582 (143 South. 633, 89 A. L. R. 1495, 1503). Compare Egley v. L. B. Bennett & Co., 196 Ind. 50 (145 N. E. 830, 40 A. L. R. 436, 441).

Plaintiff brought assumpsit on an Ohio judgment founded upon a promissory note executed in 1930 by defendants. The note was the culmination of a series of renewals of an obligation originally incurred in 1924. The original transaction took place in Ohio where the defendants resided at the time. They moved to Michigan in 1925. The original obligation contained in the same instrument a power of attorney to confess judgment, conceded to be valid under Ohio law. Renewal notes mailed to them in Detroit were signed and returned by mail to the payee, an Ohio bank. The renewals were on the

same form of instrument as the original obligation. Each time a renewal note was received, it was substituted in the files of the bank for the old, and an entry was made in the new loan ledger; generally the old note was mailed back to defendants in Detroit. The trial court granted a motion to dismiss on the ground that the note containing the power of attorney was executed in Michigan and the warrant was invalid to confer any authority to confess judgment because it was not in an instrument separate from that evidencing the demand (3 Comp. Laws 1929, § 14508 [Stat. Ann. § 27.1434]; *Jones* v. *Turner, supra; Acme Food Co.* v. *Kirsch, supra*), from which it would follow that the judgment is "without the protection of full faith and credit" (*Gordon* v. *Heller, supra;* U. S. Const. art. 4, § 1; 28 USCA, §§ 687, 688).

The case is controlled by the determination of the place of making of the renewal contract which embodied the purported authorization for the entry of judgment, for the validity of a contract is determined by the place of making. *John A. Tolman Co.* v. *Reed,* 115 Mich. 71; *Jones* v. *Turner, supra; In re Estate of Lucas,* 272 Mich. 1. If the warrant of attorney was made in Michigan, it failed to confer any jurisdiction on the Ohio court (*Jones* v. *Turner, supra*); if Ohio was the place of making, its validity is conceded. The determination of the place of making is termed by the authorities a question of "qualifications" (see Lorenzen, "The Theory of Qualifications and the Conflict of Laws," 20 Columbia Law Review, p. 247), and is a preliminary question governed by the law of the forum. *State of Ohio, ex rel. Fulton,* v. *Artie Purse,* 273 Mich. 507; 2 Beale, Conflict of Laws, p. 1046, § 311.2; American Law Institute, Restatement of Conflict of Laws, p. 395, § 311. Generally speaking, a contract is deemed to have been made in the State where the

last act necessary to make it a binding agreement took place. Goodrich, Conflict of Laws (1st Ed.), p. 218; 2 Beale, Conflict of Laws, p. 1045; 1 Williston on Contracts (Rev. Ed.), § 97; American Law Institute, 1 Restatement of the Law of Contracts, p. 80, § 74; *Holder* v. *Aultman,* 169 U. S. 81 (18 Sup. Ct. 269); *Johnston* v. *Industrial Commission,* 352 Ill. 74 (185 N. E. 191); *Gannon* v. *Bronston,* 246 Ky. 612 (55 S. W. [2d] 358, 86 A. L. R. 324). In the case of a promissory note, the place of contracting is where the note is first delivered for value. American Law Institute, Restatement of Conflict of Laws, p. 401, § 320. In 2 Beale on Conflict of Laws, p. 1047, § 312.2, it is said:

"Delivery, however, is not the only requisite to the creation of a contract on a negotiable instrument. Value must be given, and until, therefore, there has been a delivery for value, the instrument cannot be said to have had any inception. * * *

"It follows that the place of contracting of a contract on a negotiable instrument, be it the obligation of the maker, the drawer, or the indorser, is the place where, after the signature of the party in question, the instrument is first delivered for value. Since no one is bound by the mere signature of the instrument, the place where it may have been dated, executed, or signed is immaterial."

It is argued that the contract was completed when defendants deposited the renewal note in the mails of Michigan, and that thereby it became a Michigan contract. The principle of the law of contracts that an offer authorizing a reply by mail is transformed into a binding contract by posting an acceptance] (*Kutsche* v. *Ford,* 222 Mich. 442; *Burton* v. *United States,* 202 U. S. 344 [26 Sup. Ct. 688, 6 Ann. Cas. 362]; *Adams* v. *Lindsell* [1818], 1 Barn. & Ald. 681 [106 Eng. Rep. 250]; *Dunlop* v. *Higgins* [1848],

1 H. L. C. 381 [9 Eng. Rep. 805]), is inapplicable. We are dealing with a negotiable instrument, and delivery for value is the keynote of its inception. The principle is well expounded in 2 Beale, Conflict of Laws, p. 1051, § 313.1, where it is said:

"When a negotiable instrument is made in renewal of an earlier contract, the intention of the parties is that only one of the obligations shall be in force at one time. The new contract comes into existence, therefore, at the time when the old contract comes to an end, for the intention of the parties of course controls on this point. The usual case is that of a renewal note sent to a bank and placed by the bank in its files in place of the former note. *The only value given by the creditor for the renewal instrument is the discharge of the old note.* He will ordinarily not be willing to release the debtor from his obligation on the old note until the new note has actually been received by him. Since the intention of the parties is controlling as to the time the old instrument is discharged, and since value is essential to the creation of a contract on a negotiable instrument, it follows that the place of contracting of the renewal note is where it is received by the creditor (which is usually the place from which he returns the old note to the debtor). * * *

"It seems that the true view to be taken in the cases of renewal notes depends upon the actual practice as setting the meaning of the transaction. In the transaction of a renewal note neither party means to have but one note in effect at one time and the creditor does not mean at any time to have his debt unsecured by the actual possession of a valid note. It seems to follow from this that until the renewal note is actually delivered to the creditor who thereupon delivers back the old note or at least cancels the old note, the new note cannot be in effect, whether it has been posted direct to the creditor or is handed to him by the debtor. It is the actual

substitution of the new note for the old in the possession of the creditor that must constitute the moment that must determine the moment when the new note comes into effect.''

See, also, American Law Institute, Restatement of Conflict of Laws, p. 398, § 313, comment ''b''; Goodrich on Conflict of Laws (2d Ed.), p. 262, § 104; *Phipps* v. *Harding,* 17 C. C. A. 203 (70 Fed. 468, 30 L. R. A. 513); *McGarry* v. *Nicklin,* 110 Ala. 559 (17 South. 726, 55 Am. St. Rep. 40); *Nashua Savings Bank* v. *Sayles,* 184 Mass. 520 (69 N. E. 309, 100 Am. St. Rep. 573); *Bell* v. *Packard,* 69 Me. 105 (31 Am. Rep. 251); *Staples* v. *Nott,* 128 N. Y. 403 (28 N. E. 515, 26 Am. St. Rep. 480); *First National Bank* v. *Shaw,* 109 Tenn. 237 (70 S. W. 807, 59 L. R. A. 498, 97 Am. St. Rep. 840). Compare *Joffe* v. *Bonn* (C. C. A.), 14 Fed. (2d) 50; *Douglas County State Bank* v. *Sutherland,* 52 N. D. 617 (204 N. W. 683); *First National Bank* v. *Ernst,* 117 Neb. 34 (219 N. W. 798).

In *Palmer National Bank* v. *Van Doren,* 260 Mich. 310, we had to determine the place of making of a renewal note under circumstances quite like those before us now. The original obligation was incurred when the parties were in Illinois. Renewal notes were prepared by the payee bank in Illinois and mailed to defendant in Michigan where they were signed and mailed back to Illinois. We held that the renewal note was an Illinois contract.

In the case before us, while the physical acts of signing and mailing took place in Michigan, there was no completed transaction until the renewal note was accepted in Ohio and substituted for the old in the files of the bank. The result would be the same if we were to accede to the argument of counsel that the power of attorney should be analyzed as an undertaking separate from the promise to pay money (*Acme Food Co.* v. *Kirsch, supra*), for in the

case before us both were incorporated in the same instrument and neither was intended to have contractual life until both were received and accepted by the bank in Ohio in place of the instrument to be supplanted and cancelled. Therefore, the place of contracting would be the same for both undertakings.

The judgment is reversed, and a new trial is ordered. Plaintiff shall recover costs.

BUSHNELL, C. J., and SHARPE, BOYLES, CHANDLER, NORTH, McALLISTER, and WIEST, JJ., concurred.