NORRIS AND ASSOCIATES, INC., an Illinois corporation, and Jonathan A. Sion, a resident of Illinois, Plaintiffs,

v.

GRM INDUSTRIES, INC., a Tennessee corporation, Redlaw Industries, Inc., a Canadian corporation, Galtaco, a Canadian corporation, and Johnston Industries, a Tennessee corporation, and Rainer H. Bosselmann, a resident of Maryland, Defendants.

No. 1:94–CV–692.

United States District Court, W.D. Michigan, Southern Division.

Aug. 21, 1995.

Richard A. Glaser, Dickinson Wright Moon, VanDusen, Grand Rapids, MI, for Plaintiffs.

Terence J. Ackert, Smith Haughey Rice & Roegge, Grand Rapids, MI, for Defendants.

## MEMORANDUM OPINION

McKEAGUE, District Judge.

Plaintiffs' first amended complaint in this diversity action contains six counts: breach of the GRM agreement; quantum meruit/unjust enrichment; breach of settlement agreement; fraud; fraudulent conveyance; and piercing the corporate veil. Now before the Court is plaintiffs' motion for partial summary judgment, requesting judgment only as to count I of the complaint, breach of the GRM agreement. Also before the Court is defendants' cross-motion for partial summary judgment, requesting judgment not only as to count I, but also as to count II, quantum meruit/unjust enrichment.

### I

Plaintiff Jonathan Sion is president of plaintiff Norris and Associates, Inc., an Illinois corporation.[1] At some time in 1991, plaintiff had negotiations with corporate officers of defendant GRM Industries (hereinaf-

---

1. The singular "plaintiff" will be used throughout this opinion because the facts relevant to these partial summary judgment motions relate solely to plaintiff Jonathan Sion. Likewise, the singular "defendant," which is meant to refer to defendant GRM Industries, Inc., will be used because the relevant facts relate solely that defendant.

ter "defendant"), specifically, David Chandler, then-chairman of the board of directors of GRM,[2] in regard to plaintiff's company potentially acting as an agent to find a buyer for defendant's assets. Plaintiff was referred to Stephan Pinsly and, after consultation with Pinsly, subsequently received a letter from him purporting, in relevant part, "to confirm our understanding that GRM Industries would pay you commission, as follows, on any sales of assets owned by GRM to persons brought to us by you."[3] In this letter, Mr. Pinsly is identified as the Executive Assistant to the Chairman of the Board. Plaintiff contends that Pinsly also was the Secretary and Treasurer of GRM Industries at that time.

It is undisputed that plaintiff complied with the requirement stated in Pinsly's letter that he notify defendant in writing before introducing a potential buyer and that the potential buyer ultimately purchased defendant's assets. The dispute in this case arises from defendant's contention that the alleged contract "does not exist as a matter of law because Mr. Pinsly did not have the requisite corporate authority to bind GRM into such an agreement. Mr. Pinsly was an executive assistant to the Chairman of the Board of GRM. He had neither expressed [sic] nor implied authority to sign *any* documents of a contractual nature binding the corporation. Mr. Pinsly was nothing more than an assistant who exceeded all bounds of his authority." Defendant's brief, p. 4. Defendant argues that only "corporate *directors or officers* have such authority." *Id.*

Alternatively, defendant argues that the settlement agreement executed on September 30, 1993 (Appendix B), constitutes a novation and merger and supersedes the prior contract.[4]

Finally, defendant argues that Michigan law controls this lawsuit and, pursuant to the Michigan Real Estate Broker's Licensing Act, M.C.L. 339.2501(a) and 339.2512(a), plaintiff was required to have a broker's li-

cense. It is undisputed that plaintiff had no such license. Therefore, defendant argues it is not obligated to honor either the initial contract or the subsequent settlement agreement.

A hearing was conducted on June 5, 1995, at which time the Court ascertained that the parties were not in possession of the corporate records necessary to resolve the question of Stephan Pinsly's corporate status. Subsequent to the hearing, the Court was provided with these documents. The Court has reviewed the pleadings and exhibits and now considers this matter ripe for decision.

## II

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original).

The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89

2. Chandler also was, and still is, chairman of the board of directors and president of Redlaw Industries.

3. A full copy of this letter is included in this opinion as Appendix A.

4. This argument was raised for the first time in defendant's reply brief and was argued at the hearing on June 5, 1995.

L.Ed.2d 538 (1986). However, the moving party is not required to expressly negate the opponent's claim. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. The movant satisfies its initial burden merely "by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Street v. J.C. Bradford Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the movant makes a sufficient showing of an absence of evidence to support the non-moving party's case, the non-moving party then assumes the burden of coming forward with evidence demonstrating a genuine issue of material fact. *Celotex,* 477 U.S. at 324–25, 106 S.Ct. at 2553–54. The non-moving party may not rest on the mere allegations contained in the pleadings, but, rather, must set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. The non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1389 (6th Cir.1993).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. And an issue of material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356.

### III

Michigan choice of law principles govern in this diversity action. See *Mahne v. Ford Motor Co.,* 900 F.2d 83, 85, 87 (6th Cir.1990).

"Generally, under Michigan law, the nature and effect of a contract are determined by the law of the place where the contract was made. A contract is deemed to have been made in the state where the last act necessary to create a binding agreement occurred." *Grossman v. Aristech Chemical Corp.,* 882 F.Supp. 110, 112 (W.D.Mich.1994). The letter from Stephan Pinsly memorializing the agreement reached between plaintiff and defendant states: "In order to validate this understanding, please notify us in writing before you introduce a party to us." Therefore, the last act necessary to create a binding agreement was plaintiff's written notification of the identity of a potential buyer of GRM's assets.

■ The Michigan Supreme Court recognizes the "mailbox rule," i.e., the well-established doctrine of the law of contracts that posting an acceptance completes a binding contract. See *State of Ohio v. Eubank,* 295 Mich. 230, 234, 294 N.W. 166 (1940) (citing cases). It is undisputed that plaintiff sent the written notification from Illinois. Accordingly, the last act necessary to create the binding agreement occurred in Illinois, and Illinois law determines the outcome of this contract issue.

■ Defendant correctly notes that if the contract is to be performed in a different state than the one where the contract was entered into, then the law of the state of performance governs, and that in Michigan the state of performance is defined as the state in which the party who has allegedly breached the contract was obliged to perform. As its authority, defendant cites *Liberty Mutual Ins. Co. v. Vanderbush Sheet Metal Co.,* 512 F.Supp. 1159, 1167 (E.D.Mich. 1981). Defendant then argues that "[t]he only breach complained of [is the] alleged failure to pay brokerage commissions. Because such payments would necessarily be made from GRM's Michigan offices, Michigan is the 'state of performance' and Michigan law governs." Defendant's brief in support, p. 5. Defendant apparently neglected to read the entire *Liberty Mutual* opinion: "A contractual obligation to pay money is generally to be performed in the state where

the creditor resides." *Id.* at 1168 (citing two Michigan Supreme Court cases). The "creditor" in this case resided, and still resides, in Illinois. Therefore, Illinois is the state of performance and, as the Court has already concluded, Illinois law governs this contract dispute.

## IV

■■■ The supplemental materials provided to the Court by plaintiffs, which are undisputed by defendants, compel the conclusion that defendant's assertion that "Mr. Pinsly was nothing more than an assistant" is completely inaccurate.

Defendant Redlaw Industries owned a controlling share of defendant GRM Industries.[5] Plaintiffs have provided the Court with a Redlaw Industries prospectus that identifies Stephan Pinsly as an "Executive Officer of GRM," specifically, "President and Chief Operating Officer of GRM since 1992; Secretary–Treasurer of GRM since 1991." Plaintiffs' supplemental information, ex. A. Accordingly, defendants have failed to establish a genuine issue in regard to Pinsly's corporate status, which is the material fact dispositive of defendant's claim that Pinsly had no authority to bind GRM to a contractual agreement. Therefore, the Court concludes that the parties entered into a binding contract as described in Appendix A. However, the Court also concludes that this contract was superseded and replaced by the September 30, 1993 settlement agreement. Therefore, both parties' motions for partial summary judgment must be denied because they request judgment based on the original contract.

Neither side disputes the authority of the signatories to the settlement agreement to bind the parties to that agreement. "The parties' consent to a substituted agreement

rescinded the [original] agreement and rescinded [the parties'] obligation under that contract." *McLean County Bank v. Brokaw,* 119 Ill.2d 405, 416, 116 Ill.Dec. 561, 566, 519 N.E.2d 453, 458 (1988).[6] The terms specified in Appendix B constitute the accord of the substituted agreement, which has been partially performed by the payment of the $25,000. The Court concludes that plaintiff is entitled to full performance of the terms of the settlement agreement. Accordingly, on its own motion and after having heard from both sides on this issue at the hearing, the Court will grant summary judgment to plaintiffs with regard to defendants' liability under the terms of the substituted agreement.

Finally, the Court notes that the licensing requirement of the Michigan Real Estate Broker's Licensing Act is irrelevant to this case. The Court also briefly notes defendant's argument that even if the Michigan licensing requirement is inapplicable to this case, the Court still should refuse to enforce the contract as a matter of public policy. This argument is mere assertion for which defendants offer no supporting authority. The Court finds this argument unpersuasive, especially in light of the $25,000 settlement payment already made to plaintiffs, and therefore declines to adopt it.

An order consistent with this opinion shall issue forthwith.

### APPENDIX A

January 3, 1992

GRM INDUSTRIES INC.

Mr. Jonathan A. Sion, President
Norris & Associates
Chicago Board of Trade Building
Suite 1910A
141 West Jackson Blvd.
Chicago, IL 60604

---

5. GRM Industries is no longer an operating entity.

6. Both caselaw and commentators are inconsistent in the terminology used to describe situations like the settlement agreement at issue here. Such agreements are variously referred to as novations, mergers, executory accords, and substituted agreements. Technically, the agreement at issue here appears to be a bilateral executory accord, "an agreement that an existing claim shall be discharged in the future by the rendition of a substituted performance." See Calamari & Perillo, The Law of Contracts, § 21–4 (West Pub. Co.1987) (citing Restatement (Second), Contracts, § 281; 6 Corbin on Contracts, §§ 1268, 1298; 3 Corbin on Contracts, § 582). However, since Illinois law controls this contract issue, the Court uses the term "substituted agreement."

Dear Mr. Sion:

This letter will serve to confirm our understanding that GRM Industries would pay you commission, as follows, on any sales of assets owned by GRM to persons brought to us by you:

8% of the net purchase price on the first $500,000
5% on the second $500,000
4% on the third $500,000
3% on the fourth $500,000
2% on the fifth $500,000
1% thereafter.

This offer to pay commission is not open-ended and is non-exclusive.

In order to validate this understanding, please notify us in writing before you introduce a party to us.

I hope this letter gives you confidence in dealing with us.

Very truly yours,

/s/ Stephan M. Pinsly

Stephan M. Pinsly

Executive Assistant to
The Chairman of the Board

## APPENDIX B

### KIRKPATRICK & LOCKHART

MIAMI CENTER–SUITE 2000
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131–2305

TELEPHONE (305) 539–3300
FACSIMILE (305) 358–7095

CLAYTON B. PARKER

September 30, 1993

Arnold E. Karolewski, Esquire
Chuhak & Tecson, P.C.
225 West Washington Street
Suite 1300
Chicago, Illinois 60606

Re: GRM Industries Inc.—Norris & Associates, Inc.

Dear Arnold:

In an effort at settling the dispute that has arisen between Norris & Associates, Inc. and GRM Industries Inc. ("GRM"), I hereby offer the following on behalf of GRM and Redlaw Industries Inc. ("Redlaw"):

1. Payment of $25,000.00 on or before Tuesday, October 5, 1993;

2. Redlaw agrees to use its best efforts to file on or before December 1, 1993, a registration statement relating to the 25,000 shares of Redlaw issued to Jonathan Sion ("Sion");

3. In the event that Redlaw is unable to cause the registration statement referred to above to become effective on or before September 1, 1994, GRM shall pay to Sion the sum of $100,-000.00. In the event that the value of the Redlaw shares issued to Sion is less than $4.00 per share at the time the registration statement becomes effective, Redlaw will pay the deficiency to Sion.

If the above reflects your understanding of the agreement amongst the parties, please indicate by signing in the space below.

Very truly yours,

/s/ Clayton E. Parker

Clayton E. Parker

CEP:lfa

AGREED TO AND ACCEPTED this 30th day of SEPTEMBER, 1993.

/s/ Arnold E. Karolewski

Arnold E. Karolewski

### JUDGMENT ORDER

In accordance with the Court's opinion of even date,

**IT IS HEREBY ORDERED** that plaintiffs' motion for partial summary judgment (docket # 29) is **DENIED,** and defendants' cross-motion for partial summary judgment (docket # 34) is also **DENIED.**

**IT IS FURTHER ORDERED,** on the Court's own motion, that plaintiffs are **AWARDED SUMMARY JUDGMENT** as to defendants' liability under the terms of the settlement agreement (Appendix B). Both sides were heard on this issue at the hearing, and the Court's memorandum opinion ex-

plains why the settlement agreement is binding on the parties.

**IT IS SO ORDERED.**

